## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.C. individually, and all others similarly situated, | : | Civil Action |
| Plaintiffs | : | No. 15-4745 |
| v. | : | |
| Nicholas Ford, Steffen Boyd, Josette Springer, Shonda Williams, John W. Harrison E. Martinez, Steven Austin, Darlene Miller, Charles Hoyt, | : | |
| Defendants | | |

## BRIEF OF PLAINTIFF IN OPPOSITION TO MOTION TO DISMISS BY FORD ET, AL IN THEIR "OFFICIAL CAPACTIES"

### I. INTRODUCTION

It appears as though the offenders through Martha Gale purported to file some type of a motion to dismiss. Plaintiff wants to unmask Gale for she is and what she does. Gale does not explain how she purports to represent these offenders at all. Gale in another situation declared repeatedly that she does not have a connection them, refused to represent them, even though they were properly served (twice). She then at the same time claimed somebody else wasn't served- they were- then purported to represent them filing very late, waived, and meritless responses. Because this is a game to her and she does what she wants to do, she turns around and then files what she is calling a motion to dismiss the offenders but only in their "official capacity".

She doesn't explain why this is, or how she is purporting to represent them. She also does not explain why she did not timely follow the rules of this courthouse and answer the suit for this same crew for the other claims. She does not explain why, as of today, it has been 34 days since they were served and they have not even bothered to respond. She makes no mention of this. Despite this, and also being warned ahead of time on the complaint that Plaintiff will not tolerate it, they play by their own rules, do whatever they want to do when they want to do it, just like those they call clients. It is nothing but repeated behavior. She also does not know how to read or follow other instructions, making allegations on the c.o.s, she filed. No once again **Plaintiff's name is J.C. at all times, on everything**. She does whatever she wants just like the miscreants she purports to represent. I will make sure there will be a boatload of litigation to come as described if this is not followed and her allegation needs to be redacted.

Also, despite being warned about frivolous assertions or "defenses" she filed what she called a "motion to dismiss" it is nothing but the same frivolous and hopeless assertion repeated four times, in four meritless sections, even though it has been clear since 1908 and Ex Parte Young, 209 U.S. 123 (1908). Over 100 years it has been clear. She is so out of control that she is actually inventing claims to get dismissed. In every other case there has ever been, if an offender tries to change claims, they proclaim there is no claim being made. Here she actually went of her way to invent claims that don't exist so she can get the "claims" dismissed. That is outrageous. This and the rest of their behavior so far is intentionally and unnecessarily delaying this litigation, forcing Plaintiff to spend, time, effort, and resources replying to. Out of an abundance of caution and care Plaintiff will reply to the baseless filing.

1

## II. STATEMENT OF QUESTIONS PRESENTED

Should The Purported Motion Of Defendant's In Their Official Capacities To Dismiss Plaintiff's Claims Be Denied In Its Entirety

Answer: Yes

## III. STATEMENT OF FACTS

The full and real factual account appears on the complaint and should be duplicated word for word on any upcoming filing purporting to be making decisions on this case. A condensed version will appear here. A lawsuit was filed against the majority of offenders in this complaint, in mid- July 2013, they were notified. They then launched a terrible campaign of illegal retaliation, other federal and state rights were trampled on as well. On August 22nd, 2013 Plaintiff went in for his first office visit with Ford since the protected activity of filing the lawsuit and also the relaying of it. Right away the punishment began as Ford immediately throws a tantrum about the lawsuit, demanding Plaintiff drop the suit, declaring he would tell the judge and they would end it, gave Plaintiff a retaliatory completely random, warrantless, suspicionless urine test/ search to take.

In addition to being pure retaliation, it is also a violation of the Fourth Amendment, Plaintiff never had that condition, was never ordered by any court, their own policy said it can't be done if not, it was completely random, violation of decades worth of binding law. Also in that same meeting Ford refused to give Plaintiff his latest perjured script labeled a "summary sheet". At a September 6th, 2013 hearing, John W. Harrison retaliated against Plaintiff's Sixth (and First) Amendment right "Oh he's not going on without an attorney" referencing Plaintiff's right to counsel. He continued to try to have

2

Plaintiff sanctioned/penalized because he simply wanted to wait until his legal representation arrived. Ford made good on his earlier threats as Harrison punished Plaintiff again for filing the suit, telling the robeowner, "He sued his p/o, he sued the supervisor, he sued the supervisor's supervisor", referencing the lawsuit in which exactly that happen.

In addition to all of this Ford never gave Plaintiff the perjured script he refers to as a " "summary sheet" for this September 6th, 2013 probation hearing, Plaintiff never received it before hand, during the hearing, or afterwards. He got a copy of the fantastical sheet almost two years later. In addition to being part of the campaign of illegal retaliation, it was also a violation of due process. Then on September 13th, 2013, Ford continued his campaign of illegal retaliation by planning and attempting to perform another retaliatory, illegal, unreasonable search. Ford went to Plaintiff's residence and literally starting punching the door, not knocking, punching. Ford literally punched the door for a solid 30 minutes, at couple of different points, he screamed off the top of his lungs (Victim's first name) in the middle of the street, causing a disturbance. Ford terrorized the person inside as well as the neighborhood in general.

On September 19th, 2013 Plaintiff arrived on time for a 3:00 office visit. For reasons never known, Ford made Plaintiff wait a long time, then finally called him, so it was already much later when he walked in the booth. Ford speaks about the above September 13th, 2013, retaliatory search. He admitted he wanted to search the residence despite never attempting to prior to this, he had only visited one-time prior, seven months prior-long before he found out about the suit against him. In that visit, in which again took

3

place before the suit was filed, Ford was not nearly as aggressive nor did he request to do a search. All of the sudden, after he found out he was being sued, he then did the above.

He eventually brought up the lawsuit asked about it and if Plainitiff was going to end it, to which Plaintiff replied no to the latter, he was attempting to find a service address. Ford then launched into a tirade, demanding Plaintiff drop the lawsuit, Plaintiff said no, he won't be bullied. Ford then said he would get the d.a. to file charges against Plaintiff if he did not drop the suit. Plaintiff told Ford that this is illegal and said it would lead to more trouble for him. Ford at that point, said I am calling them (d.a.) now screamed "get out"! Then he picked up the phone and started dialing. Plaintiff at that point again warned him again this is illegal, which in turn Ford screamed even louder GET OUT! It wasn't a real shock Ford gave falsified accounts on the above on perjured scripts he calls summary sheets and what is purported to be internal notation that Ford authored in which Plaintiff posseses. Shortly after this, the offenders continued with their retaliation right after they were served with the above lawsuit on November 7th, 2013. The offenders including Ford, Boyd, Austin planned out their latest punishment, this time using co-workers.

On November 14th, 2013, Plaintiff went in for an office visit and a E.P. Martinez, who he never saw before, was the p/o, right away it was clear Martinez was on an agenda. Right from the start, she was abrasive and aggressive- for no reason, and she interrogated Plaintiff about things that were not relevant. Shortly in, Plaintiff said he knew what this was really about, they just got a lawsuit. Martinez glanced at Plaintiff like she knew it was coming, then glanced back at the computer not commenting on that statement, it looked like she was following step by step instructions. Martinez continued her behavior, trying desperately to manufacture an issue. She then claimed their

4

emergency contact was old and she demanded what she thought was a newer one, in a very confrontational manner. Plaintiff stated he did not wish to give a newer one, whatever they have should be sufficient.

With this Martinez achieved her whole goal, as she then escalated her already combative behavior, to assert Plaintiff had to give a (purported) newer emergency contact. Plaintiff stated that he was well within his rights, he does not have to give one and is not and he mentioned that there is no rule or regulation anywhere stating he does, no law or case law. Martinez then asserted Plaintiff had to give her one "or else". Plaintiff again repeated what he had said. She then said "I am getting the supervisor". Plaintiff said just give me my next reporting date so I can go. In a commanding and authoritative tone Martinez said "no stay here". A reasonable person would have known they were not free to ignore the command, just leave the building and continue with their business of the day, this includes the fact that the card was not signed and given a new date. Almost like it was rehearsed, on cue, not one, but two out of control, mouthy female supervisors, Josette Springer and Shonda Williams, come into the booth and immediately explode into a tantrum. Martinez comes back into the booth as well, so it is the three of them and their one victim. Again, Plaintiff knew they just got served with a lawsuit so it was not a huge surprise.

Springer and Williams are yelling at Victim in a loud, threatening intimidating tone, demanding Plaintiff give what they felt was a newer emergency contact. Plaintiff again repeated he did not wish to give a newer one, whatever they have should be sufficient, he was well within his rights, no rule or regulation anywhere stating he does, no law or case law, he does not have to give one and is not. Springer and

5

Williams then told Plaintiff, they don't care what is in the rules, he could not go anywhere unless he gave one. Plaintiff stated they could not do that, it's illegal, and they will get sued. They responded if Plaintiff does not give them one then, then Plaintiff would go to jail. Note, this meant Plaintiff would be there for about 40 days until a detainer hearing which would have been prolonged for a next available date due to limited availability of the robeowner assigned to the case. Plaintiff said no this is illegal and attempted to leave but Springer stopped him. Plaintiff again repeated the above, and they have no right to imprison him. Springer and Williams again said Plaintiff was going to jail if he did not provide them with one.

Plaintiff did not have to but he gave them an attorney's name. Again, Plaintiff would have basically spent 40 days in jail until a detainer hearing. Later on, after the attorney's name was given in the debacle that day, Springer conceded Plaintiff was right, it is not in the rules or regulations, any law but still tried to assert basically she could do whatever she wanted, she can't and Plaintiff emphasized that again. Again, during this encounter, Plaintiff was without question illegally seized, they did not have any objective reasonable suspicion that Plaintiff was engaging in criminal activity or was in violation of probation in any way- in which they still could not seize him on the spot to begin with. Again, they had *Plaintiff*'s contact information, he did not have to give any emergency contact, or what they purported to be a newer one. This is perfectly legal and not grounds for any violation technical or otherwise[1].

---

[1] Moreover, as the two big mouths are familiar with, and everybody else there, the proper procedure when they actually have probable cause someone violated probation, is to send a request to the post-trial unit in CJC, asking for a vop hearing/Gagnon I. They do not have authority to detain and/or imprison people on the spot for real violations, like not reporting, failed drug tests, so on. Likewise they do not have the authority to detain and imprison because someone didn't give them what they allege is a newer emergency contact.

6

Of course they gave a completely falsified account as to what happened, not a shock. One bogus account came from Ford, despite him not being there at all that day! They are going to say Ford was not even Plaintiff's p/o on this date, not only this but he was not even in the same unit as Plaintiff, or floor. Yet he somehow made a (phony) entry for a meeting/seizure/imprisonment that took place with three other people. On May 30th, 2013, Nicholas Ford, first knowingly and intentionally violated Plaintiff's physician-patient confidentiality. Ford knowingly and intentionally acquired Plaintiff's private, confidential, federal and state protected medical records from a certain unnamed practice. In addition to acquiring this protected information over the phone, Ford was so eager to retaliate and also violate federal and state health laws, that he provided a fax number and facilitated the protected information/ records/ documents to be faxed in. Ford full well knew that what he was doing was illegal, Plaintiff never gave anyone consent, never waived any privilege at any time for any one. Instead of saying to himself, and/or to anyone else for that matter, wait a minute I should not be violating state and federal law, let me not do this, he chose to violate the law- yet again.

Ford then subsequently published this protected information and gave it to more and other third parties, numerous people like other employees of probation including Boyd, district attorney's office, and the court system. He did it again on with a September 6th, 2013 dated document. As a result of Ford's illegal and malicious publishing, numerous people saw and also have Plaintiff's protected, confidential medical information/records/documents. Obviously, he never had any type on consent to do that as well. He continued his violations, in March of 2014, when he then gave the information/records/documents to a purported law firm including two supposed

7

employees, numerous others they refer to as employees that worked on the case saw and have these. Obviously, he never had any type on consent to do that as well.

Ford caused the information/records/documents to be filed in the Eastern District, where somebody who purchased a robe saw it and has it, probably gave it to numerous others, also this person's staff masquerading as clerks and whatnot saw it and have it, as part as permanent file that can be accessed by pretty much anyone there for years to come. Obviously, he never had any type on consent to do that as well. Ford's violations continued in January of 2015, where he caused to give information/records/documents to another purported law firm and a supposed employee, numerous others saw and have this. Obviously, he never had any type on consent to do that as well. Here Ford's conduct is part of a continuing practice that continues through today.

Also falls under F.A.retaliation as well. Boyd, Austin, Miller, Hoyt, among many things, failed to properly supervise, discipline, control, train and acted with deliberate indifference to the needs of Plaintiff and other victims and all of which caused direct harm to this victim and all others similar situated.They also participated in violating plaintiffs rights, directed others to violate them, all had knowledge of and acquiesced, approved, ratified the illegal behavior.

Plaintiff filed this suit on August 19th, 2015 and all of the offenders were properly served December 17th, 2015. On January 5th, 2016, the offenders purported to file a motion to dismiss "in their official capacities" ostensibly seeking dismissal of claims against them and their employees filed under Rule 12 (b) (6) of the Federal Rules of Civil Procedure.

## IV. COUNTER STATEMENT OF THEIR "INTRODUCTION"

8

Plaintiff for himself and others, including numerous victims, have filed this suit in connection to numerous concrete violations of federal and state law that have occurred timely within the suit and are still occurring today. Not surprisingly, they then attempt to minimize their illegal behavior by in what they refer to as a factual background, breeze right through it, just this and this, that's all, no elaboration of what does appear, nothing. Despite the harmless attempted portrayal they put down, the real facts appear in the complaint and above, and they are anything but that. Gale then in a footnote on page 2 purports to "explain" her thoughts on the complaint's causes of action, however the real causes of action appear on the complaint, and like usual they don't match up.

Gale then states on page three that Plaintiff is suing the offenders in their official capacity for prospective relief, but the she states "but seeks in his Demand for Relief compensatory and punitive damages". Not only would it not change anything to begin with based on the above, but what she "forgot" to mention that it states **individually.** Gale filed a totally frivolous reply, making up claims the complaint did not contain, intentionally and unnecessarily delaying this litigation, forcing Plaintiff to spend, time, effort, and resources replying to a motion and phantom claims that should not have been filed. The whole filing is meritless and sanctionable. They were on notice with Plaintiff's complaint, he said what the comsquences were going to be for this and other things- because they are so out of control they ignored them. She closes this section purporting to describe the equitable relief in the complaint, however again, the real equitable relief, including Ford's intensive inpatient mental health treatment including all the medication he needs, then if should be released, then intensive outpatient including continuation of the medication, appears on the complaint and not her "description."

9

After all that, they don't bother attempting to state the applicable standard of review on a phony rule violating motion to dismiss let alone a real one. Plaintiff will in the next section though.

## III. RULE 12 (b) 6 STANDARD

The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). They clearly have not done so. In addition, the "burden is on the [an offender] to demonstrate the constitutionality of its actions." Startzell v. City of Phila., 533 F.3d 183, 201 (3d Cir.2008). They clearly cannot ever do so. Generally, when rendering a determination as to whether to dismiss a claim filed under Rule 12 (b) (6) of the Federal Rules of Civil Procedure, the Court tests the sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "A pleading must be sufficient enough to enable the court to make out the potential viable threats theories upon which the complaint is based." Hicks v. Arthur, 843 F. Supp. 949, 959 (E.D. Pa.1994).

In determining the sufficiency of the complaint filed by a pro se Plaintiff, courts must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (liberal pleading dictates that, particularly in the context of a pro se complaint, such allegations be deemed sufficient). See also Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir.1997) (same). The rule of liberal construction is "particularly important in civil rights cases."Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000). Courts must therefore "accept as true all of the facts in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d

Cir. 1997); Petruska v. Gannon University, 462 F.2d 294, 299 (3d Cir. 2006) (for purposes of a motion to dismiss, a federal court must accept as true the plaintiff's factual allegations); Albright v. Oliver, 510 U.S. 266, 268 (1994).

A federal court also must treat mixed question of law and fact as true drawing all reasonable inferences in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64 (D.C. Cir 2003). All "doubtful questions" are to be resolved in favor of the plaintiff. Gray v. Occidental Life Ins. Co. of Cal., 387 F.2d 935, 936 (3d Cir. 1968); Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). Further, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant[s'] conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."Common Cause Of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257 (3d. Cir. 2009. Legal conclusions provide the framework of a complaint if they are supported by factual allegations as they most certainly are here. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "`a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to `give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. Since this is a § 1983 action, the plaintiff is entitled to relief if his complaint sufficiently alleges deprivation of any right secured by the Constitution. Higgins v. Beyer, 293 F.3d 683, 688

11

(3d Cir. 2002). Under Rule 12(b)(6) the Third Circuit asks, "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Institutional Investors Group v. Avaya, Inc.564 F.3d 242, 252 (3d Cir. 2009).

A Rule 12(b)(6) motion will only be granted "'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); H. J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989).[2] Plaintiff realizes there is a circuit split, he uses the Seventh Circuit's correct law on the issue, but he has met any alleged higher pleading standard this circuit might have adopted. "The issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claim." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000). See also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (In reviewing a 12(b)(6) motion, "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Reasonable inferences must be drawn in favor of the plaintiff ").

Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. v. Woodmont Builders, LLC, 244 Fed. Appx. 514, 517 (3d Cir.2007) (quoting Twombly, 127 S.Ct. at 1969). "A well pleaded complaint may proceed even it appears that a recovery is very remote and unlikely" Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955,

---

[2] Any alleged higher standard set forth in Twombly and Iqbal only applies "to highly complex cases", which we certainly don't have here. Smith v. Duffy, 576 F.3d 336, 339-40 (7th Cir. 2009); Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th Cir.2009) ("Our system operates on a notice pleading standard; Twombly and its progeny do not change this fact.")

12

1965 (2007). In addition, "a complaint states a claim on which relief may be granted whether or not some defense is potentially available... Resolving defenses comes after the complaint stage." U.S. v. Northern Trust Company, 372 F.3d 886, 888 (7th Cir. 2004).

To evaluate a motion to dismiss courts consider the facts relayed in complaint, exhibits attached to the complaint, documents incorporated into the complaint by reference. Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007).

## IV. ARGUMENT

### A. The Offenders Are Not Entitled To Any Immunity In Any Capacity

Here they claim Philadelphia Probation Department- which is not even a named defendant- is a state entity, and that it is well-settled. They are wrong on both accounts. The fact of the matter is, is that, they work for the city, at all times acting as agents of the City in all respects in the control, their paychecks are issued by the City of Philadelphia; the union to which they belong to negotiated its contracts with the City; they are required to live within Philadelphia city limits; their car they use for work assignments is owned by the City, they are listed on the city website and phone directory, among many more facts. On top of that common sense it already has been decided as it has long been clear Adult Probation and Parole Departments in the Commonwealth are agencies of the county government. Zinser v. Adult Probation-Parole Dept. of Montgomery Cty, 2007 U.S. Dist. LEXIS 931, *2 (E.D. Pa. Jan. 8, 2007) ("[T]he Adult-Parole Department of Montgomery County is not a proper defendant in a § 1983 action because it is a mere government department and has no legal identity separate from Montgomery County"); Duffy v.County of Bucks, 7 F.Supp2d 569, 579 (E.D.Pa. 1998) (The Probation Dept. is

13

not a proper defendant under § 1983 because it has no legal identity separate from Bucks County; it is not a "person" under § 1983).

They attempt to cite Benn, but it does not lend any support, it contains entirely different facts, not one person or employee was even sued. Likewise the other cases they cite in this section are off point as well.Normally, the party asserting Eleventh Amendment immunity "bears the burden of proving its applicability." Betts v. New Castle Youth Development Center, 621 F.3d 249, 254 (3d Cir. 2010). But even though that did not occur here, it does not matter at all because we know Gale invented claims, intentionally and unnecessarily delaying this litigation, forcing Plaintiff to spend, time, effort, and resources replying to a motion and phantom claims that should not have been filed. As we know, as anybody with working eyes can see, Plaintiff is suing the offenders in their official capacity for prospective relief **only.** Id at 30. This was enough as it is, even if the complaint just listed damages generally. However we also know it does not, as the complaint clearly all the **damages are individually.**

(b) Punitive damages against **every offender individually** in the amount of 500,000

(c) Compensatory damages against **every offender individually**, in the amount of 500,000 dollars

(d) Presumed damages against **every offender individually**

Plain as day. In addition two those two facts, the complaint also went out of its way to state the law in regards to them having no immunity at all- even if they are a state agency- which they aren't. He will repeat here again. The offenders are being sued in their official capacity only for prospective relief. Will v. Michigan, 491 U.S. at 71 n.10 ("of course a state official in his or her official capacity, when sued for injunctive relief,

14

would be a person under § 1983 because official-capacity actions for prospective relief are *not* treated as actions against the State"); Helfrich v. Commonwealth, 660 F.2d 88, 90 (3d Cir.1981); ("The eleventh amendment does not deprive the district court of jurisdiction to grant prospective equitable relief against appellee state officials, however, Ex Parte Young,209 U.S. 123 (1908), nor does it prevent entry of an award of damages against the officials in their individual capacities")[3]. This has been clear for no less than 108 years, Ex Parte Young,209 U.S. 123 (1908).

The Supreme Court has consistently upheld Ex parte Young. [4] Could not be more hopeless. He notes prospective relief can be issued directly from the Fourteenth Amendment as well[5]. Plaintiff notes again the Fourth Amendment is enforceable against the states through the fourteenth amendment. Camara v. Municipal Court, 387 U.S. 523, 528 (1967). He also notes prospective relief can be issued under state law/claims in this suit as well. They don't mention any of the above though in their baseless filing though. Consequently, this suit against these offenders does not represent a suit against the state

---

[3] No amendment or immunity ever extends to prospective relief against alleged or actual state agencies through state officials in official capacity. Russel v. Dunston, 896 F.2d 664, 667-68 (2d Cir. 1989), cert denied, 498 U.S. 813; Coakley v. Welch, 877 F.2d 304, 306 (4th Cir. 1988), cert. denied, 493 U.S. 976.. Mieners v. University of Kansas, 359 F.3d 122 (10th Cir. 2004); Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir.1993). Even offenders who are granted absolute immunity still are not immune for injunctive relief liability. Jorden v. National Guard Bureau, 799 F.2d 99 (3d Cir. 1986). Monetary relief that is "ancillary" to prospective relief also is not barred by any Amendment or immunity. Edelman v. Jordan, 415 U. S. 651, 667-668 (1974).

[4] Hutto v. Finney, 437 U.S. 678, 690 (1978) (reaffirming that "state officers are not immune from injunctive relief"); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105 (1984) ("[T]he Young doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"); Idaho v. Couer d' Alene Tribe, 521 U.S. 261, 269 (1997) ("We do not... question the continuing validity of the Ex Parte Young Doctrine.")

[5] See Griffin v. County School Board, 377 U.S. 218, 233-34 (1964); remand instructions of City of Kenosha v. Bruno, 412 U.S. 507 (1973); Williams v. Brown, 398 F. Supp. 155, 157 n.1 (N.D. Ill. 1975) (existence of a Fourteenth Amendment cause of action for equitable relief has long been accepted, citing cases); Patterson v. Ramsay, 413 F. Supp 523, 528 (D.Md.1976) (federal courts have power to grant equitable relief for violations of the Fourteenth Amendment). Crosley v. Davis, 426 F. Supp 389, 396 (E.D.Pa.1978) (problems associated with the imposition of a damages remedy do not arise in suits for injunctive or declaratory under direct claims). Farmer v. Ramsay, 41 F. Supp. 2d 587, 591 (D.Md. 1999).

15

or any state agency- even if it is one. It is well settled they do not have any immunity

including the Eleventh Amendment, for these reasons the real claims go forward.

## B. Moving Offenders Are Persons Under 1983

She again invents claims in this section, not only that, but then basically multiplies

/repeats the same wholly frivolous assertions in the previous section, again forcing

Plaintiff to expend time, effort and resources reading and replying to it. Same thing

repeated again now. Yet again, an actual "state official in his or her official capacity,

when sued for injunctive relief, **would be a person under § 1983** because official-

capacity actions for prospective relief are *not* treated as actions against the State").

Will v. Michigan, 491 U.S. at 71 n.10. For this reason this suit against these offenders

does not represent a suit against the state or any state agency- even if it is one.

Accordingly, for these reasons the real claims go forward. Consquently, this suit against

these offenders does not represent a suit against the state or any state agency- even if it is

one

## C. Plaintiff's Equitable Relief Claims Go Forward Without A Hitch

No, Plaintiff's complaint adequately and properly seeks equitable relief like it does

damages, he is entitled for both. We also know a district court is empowered to award the

plaintiff all relief to which he is entitled, including relief not demanded in his pleadings.

Helms v. Hewitt, 780 F.3d, 367, 370 (3d Cir. 1986), so Plaintiff is not limited to what is

down. Declaratory relief is retrospective "to the extent that it is intertwined with a claim

for monetary damages that requires us to declare whether a past constitutional violation

occurred." PETA v. Rasmussen,298 F.3d 1198, 1202 n. 2 (10th Cir.2002); Faustin v. City

& County of Denver,268 F.3d 942, 948 (10th Cir.2001); Balgowan v. New Jersey, 115

F.3d 214, 217-18 (3d Cir.1997) (because there were constitutional violations present, they could grant the plaintiffs relief in the form of a declaratory judgment, a milder alternative to an injunction).

Also where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' **current rights or future behavior**. Green v. Branson,108 F.3d 1296, 1299-1300 (10th Cir.1997); Helms v. Hewitt, 780 F.2d 367, 370 (3d Cir.1986) ("The declaration is a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions were unconstitutional and which will serve as a standard of conduct to **guide officials in the future**"); See also Lippold v. Cole, 468 F.3d 1204 (10th Cir. 2006) (declaratory judgment that the city had violated the Plaintiff's rights after event took place and no future events on par).

The need for injunctive relief arises out of a past injury. Milliken v. Bradley, 433 U.S. 267 (1977); Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990) (existence of past harm does not render an otherwise forward looking injunction retroactive). Only one plaintiff with standing is required for an injunction. Crawford v. Marion County Election Board, 472 F.3d 949, 951 (11th Cir. 2007), aff'd 553 U.S. 182 (2008). Plaintiff also has state claims and they are not bound by federal rules of standing. Doremus v. Board of Educ, 342 U.S. 429 (1952). The emphasis on standing in their law also hinges on whether a violation already has happened. "The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd., 928 A.2d 175, 184 (Pa. 2007). A person does not have a direct interest if he has not been *harmed* by the specific

17

constitutional concern at issue. Id.; see also Commonwealth v. Haldeman, 135 A. 651, 652 (1927). Past not future.

This case deals with ongoing violations of federal (and state) law. Even after a violation has occurred but not likely to repeat itself, a Plaintiff has standing and a court can hear the case to "elude similar scenarios in the future" from others. See e.g., Colonial Gardens NursingHome, Inc. v. Bachman, 473 Pa. 56, 59, 373 A.2d 748 (1977) (a court may decide cases with substantial questions, otherwise moot, which are capable of repetition unless settled. Here, in an effort to ensure the ability to elude similar scenarios in the future, this Court will decide the case."); Flynn–Scarcella v. Pocono Mountain School District, 745 A.2d 117 (Pa. Cmwlth. 2000) (review of a disciplinary decision that had expired deemed not moot because school district's ability to enforce conduct of great public importance).

They attempt to cite Lyons to help their meritless cause out to apparently stop injunctive relief, but it doesn't at all. In Lyons, the plaintiff claimed that Los Angeles police officers put him in an illegal chokehold during a traffic stop. 461 U.S. at 105,. Based on that incident, Lyons brought a § 1983 action seeking both monetary damages and prospective relief to stop the chokeholds. Id. The Court noted that for an injunctive relief, Lyons would have to allege that he would have another encounter with the police but also allege (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner" in order to have standing to bring his claims for prospective relief. Id. at 105-06.

Several courts have persuasively distinguished Lyons on the grounds discussed above, holding that a plaintiff has standing to pursue claims for injunctive and declaratory relief to combat a pattern of illicit behavior. In La-Duke v. Nelson, 762 F.2d 1318 (9th Cir. 1985), the Ninth Circuit observed that the "Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a `pattern' of illicit law enforcement behavior." Id. at 1324. The court distinguished Lyons by noting that the defendants engaged in a pattern of officer behavior violative of the plaintiffs' constitutional rights. The Second Circuit reached a similar result in Deshawn E. by Charlotte E. v. Safir,156 F.3d 340, 344-45 (2d Cir.1998). In Safir, plaintiffs brought a § 1983 action seeking an injunction and declaratory relief against the coercive interrogation methods of the so-called "Detective Squads" that patrolled New York City Family Court buildings. Id. at 343-44. The court distinguished Lyons and held that the plaintiffs had standing to seek prospective relief because the challenged interrogation methods were illegal and represented a pattern of officer behavior.

Another case, A v. Nutter, 737 F.Supp.2d 341, 352-53 (E.D.Pa.2010), also rejected a Lyons-based standing challenge in analogous circumstances. In A v. Nutter, the defendants argued that plaintiffs did not allege that "all or most of DHS's caseworkers permit children under their supervision to be injured," so the plaintiffs did not have standing under Lyons. Id. at 352. But Lyons did not resolve the standing question when defendants act pursuant to a custom or practice. "Plaintiffs' averments in this case meet that standard enunciated by the Lyons Court in that they allege future injury is imminent because of a policy or custom either acquiesced in or authorized by the City Defendants" Id at 353. In another probation case involving another illegal pattern and practice, they

19

too also rejected Lyons by concluding that, that illegal pattern and practice "greatly increases the likelihood that any individual, including McBride, will imminently suffer the very same deprivation of liberty McBride claims to have suffered in the past." McBride v. Cahoone, 820 F. Supp. 2d 623, 635 (E.D. Pa. 2011)[6].

Now there is no requirement at the pleading stage for Plaintiff to identify a specific policy, custom or practice to survive a motion to dismiss. Carter v. City of Philadelphia,181 F.3d 339, 358 (3d Cir.1999). This would be "unduly harsh" at this early juncture. Id[7]. But Plaintiff has in fact done so already at this stage. Here we know the complaint and evidence relayed the facts that Philadelphia Probation and Parole office has an official written policy to conduct a random, warrantless, suspicionless urine test/searches of all probationers and parolees (their own public record reports, there are

---

[6] Many other courts have done the same, including these. Melendres v. Arpaio, 695 F.3d 990, 998 (9th Cir. 2012) (holding "Defendants have engaged in a pattern or practice of conducting traffic stops as part of `saturation patrols' or `sweeps' targeting Latinos" and future injury to plaintiffs, who were Latino, was "sufficiently likely"); Ginest v. Bd. of Cnty. Comm'rs, 333 F. Supp. 2d 1190, 1198 (D. Wyo. 2004) ("[S]ystemic and longstanding inadequacies create such a high risk of future injury that deliberate indifference must be inferred"); Clark K. v. Guinn, 2007 U.S. Dist. LEXIS 35232 at *12 (D.Nev. May 9, 2007), (The alleged systemic deficiencies in the Clark County and Nevada foster care system are similar to an injurious policy and different from the random act at issue in Lyons. The alleged pattern and practice in this case presents a substantial likelihood that the alleged injury will occur.); Tafoya v. Salazar, 516 F.3d 912, 919 (10th Cir. 2008) ("[K]nowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference.")

Also, Plaintiffs seeking injunctive relief against ongoing violations, they are never barred by any statute of limitations. See, e.g., Montin v. Estate of Johnson, 636 F.3d 409, 415 (8th Cir. 2011) ("Plaintiff's have not "deemed to have permanently sacrificed his or her right to obtain injunctive relief merely because the statute of limitations has run as measured from the onset of the objected-to-condition or policy")See also Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001) ("[The refusal to provide medical treatment to an inmate] continued for as long as the defendants had the power to do something about his condition.)

[7] This is because there is no heightened pleading standard with respect to the "policy or custom" requirement. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-68 (1993); see also Empress LLC v. City of San Francisco, 419 F.3d 1052, 1055 (9th Cir. 2005); Evans v. McKay, 869 F.2d 1341, 1349 (9th Cir. 1989) (a claim "under [§] 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'"); Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986) ("[I]t is enough if the custom or policy can be inferred from the allegations of the complaint.")

59,000 people county probation or parole) even ones without the condition on their first visit[8]. Comp at 7, Page 3. Exhibit B2. Over 59,000 people including Plaintiff had this were victimized by this. We know this is illegal and an ongoing violation of federal law based on all of the clearly established law cited, which will not be repeated here. We also know the probation office has a custom and practice[9], pattern, of give authorization, regarding administering/ conducting random, warrantless, suspicionless urine test/searches of all probationers and parolees (59,000) even ones without the condition, after the first test which are ongoing violations of federal law. Comp at 7, page 5[10]. Over 59,000 people including Plaintiff- numerous times were victimized by this. Comp at 6, page 3. Exhibit A. We know this too is illegal and an ongoing violation of federal law based on all of the clearly established law, which will not be repeated here. For example, the Fourth Circuit issued injunctive relief in regards to stop nothing more than toleration of occasional illegal searches by police. Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966). This case is no comparison.

Unlike what they attempt argue, the Complaint and evidence establishes that this case actually pertains to illegal policies, customs, practices, persistent patterns, that are all ongoing violations of federal law. They are correct, Plaintiff personally has suffered direct injury in fact by them- numerous times, however that does not, and cannot change

---

[8] "It is settled law that the collection and analysis of a urine sample to test for drug use constitutes a search that is subject to the constraints of the Constitution's Fourth Amendment." Kerns v. Chalfont-New Britain Tp. Joint Sewage, 263 F.3d 61, 65 (3d Cir. 2001).
[9] A "custom" not need " be formal through the body's official decision-making channels." Monell, 436 U.S. 690. A plaintiff need not also demonstrate that "official policy-makers had actual knowledge of the practice at issue." Navarro v. Block, 72 F.3d 712, 714-15 (9th Cir. 1996). This is because unlike a policy, which comes into existence because of the top down affirmative decision of a policymaker, a custom or practice develops from the bottom up. Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.1989).
[10] See also exhibit A, Their public record answer sheet that says "You may be subject to random drug testing". Note, it isn't may, you are. They play by their own rules, own game, not matter how illegal. This is yet more concrete evidence that comes straight from them. As we know that practice is illegal, both state and federal law going back decades. Found at https://www.courts.phila.gov/pdf/site/appd-faq.pdf

what was just said. Also again, from a legal aspect, the need for injunctive relief arises out of a past injury. Milliken v. Bradley, 433 U.S. 267 (1977); Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990) (existence of past harm does not render an otherwise forward looking injunction retroactive). Because of the above, Lyons, to the extent they purport to cite it, does not apply. Plaintiff has established first party standing the equitable claims go forward.

Plaintiff also brought this suit on behalf of third parties, all others similarly situated, which of course is all of the other 58,999 probationer/parole victims, and also the members of the public, new ones, now and in the future that just somehow got convicted and begin probation or parole. Plaintiff has established third party standing, jus tertii, as well. Plaintiff personally has suffered direct injury, he bears a close relationship with other probationers/parolees including Ford's victims, and there is a hindrance on their part to protect their own interests- which are aligned with Plaintiff's- because they are not trained lawyers, they also do not have the knowledge or skill to bring such a suit on their own, many don't know the proper law at all, many don't even know if they have a special condition, they don't know the policies, patterns, practices that go on are illegal and are ongoing violations of federal law. Plaintiff has established third party standing as well, he only needs to meet the first requirement, but he has all three.

For example Plaintiff's case in much stronger than the one in Craig v. Boren, 429 U.S. 190 (1976). There the principal plaintiff's claim became moot while appeal was pending. A secondary plaintiff's claim remained live, and she had sufficient injury to satisfy Article III's standing barrier, but her claim depended on third-party rights. Since the rule against hearing such claims was not constitutionally compelled, and since she

22

continued to press her claim "vigorously and 'cogently,'" the Court held that denying her

standing would "serve no functional purpose." Id. at 192-94. The Court therefore heard

the case[11]. Here, nothing is moot, Plaintiff has first party standing, and also has

relentlessly prosecuted this suit, and will continue to no matter how many years it takes.

He also that third party standing has been satisfied in cases where criminal defendants

challenge their convictions by raising the rights of third parties[12]. By similar reasoning,

litigants were permitted to raise third-party rights in order to prevent possible future

prosecution. See, e. g., Doe v. Bolton, 410 U. S. 179 (1973). Here it would be the future

prosecutions of probation/parole violations based on illegal random searches in which the

person never even had a condition, still illegal if they did. Again, Plaintiff (and tens of

thousands of others) have suffered a direct injury and harm in fact. That harm directly

came from the offenders and their ongoing violations of federal law, and a favorable

decision will alleviate the harm for all the victims past, present, and future. He has

demonstrated both past injuries and a real and immediate threat of future injury to him

and tens of thousands of others. Plaintiff and their other victims, past, present, and future

could not have more of a personal stake in this.

Plaintiff wanted to address her footnote 1 on page 2-3. They talk about some of the

things the complaint establishes and reference Monell. It is a fact that Monell is met but

again the illegal policies, customs, practices, persistent patterns, all constitute ongoing

violations of federal law. They try to have it both ways because they attempted to cite

---

[11] See also See Annenberg v. Commonwealth, 757 A.2d 333 (Pa. 1998) (entertaining a challenge by a taxpayer to a statute that required Pennsylvania residents to pay taxes on holdings in foreign public corporations); Craig v. Boren, 429 U.S. 190 (1976) (finding a vendor of alcohol possessed standing to challenge a law banning the sale of alcohol to males under the age of 21, and females under the age of 18, despite the vendor not being a male under the age of 21).

[12] See, e. g., Eisenstadt v. Baird, 405 U. S. 438 (1972); Griswold v.Connecticut, 381 U. S. 479 (1965); see also McGowan v. Maryland, 366 U. S. 420 (1961).

23

Lyons which only dealt exactly with that, no alleged or state employees or agencies. Plaintiff notes if they are city employees he has met Monell. If they are state agents his threshold is even easier as respondeat superior applies, Plaintiff does not have to meet Monell, just has to establish ongoing violations of federal law- as he has done[13]. It is well established the burden for the party alleging mootness as "'heavy,' even 'formidable.'" Dejohn v. Temple Univ. 537 F.3d 301, 309 (3d Cir. 2008).

Nothing it moot in this matter including outside of the above illegal searches. They still have the records, that is a live issue, Ford is still employed and still is severely mentally ill and is in desperate need for intensive inpatient mental health treatment, this is a live issue. Plaintiff notes that her assertion here (yet another one) that they are entitled to Eleventh Amendment immunity is again frivolous and hopeless, again they do not have that immunity, which is a separate issue from stating a claim. If somebody fails to state a claim, that would have nothing to do with any immunity and vice versa. They have now waived an argument that Plaintiff has failed to state a claim in this section and it goes forward automatically. In sum Plaintiff has stated claims for "truly" equitable relief. Plaintiff notes that her assertion (yet another one) that they are entitled to Eleventh Amendment immunity is again frivolous.

## E[14]. Offenders Are Not Immune From Any Damages

Here yet again she invents claims, repeats the above again, in her meritless filing. Yet again. In this section she brings up Will to purport to support her bogus and helpless

---

[13] American Ass'n of State Troopers, Inc., v. Preate., 825 F. Supp. 1228, 1229 (M.D.Pa.1993) (theory of respondeat superior applies to state agents for prospective relief); Santiago v. Miles, 774 F. Supp. 775, 792 (W.D.N.Y1991) (in action for prospective relief against state officials plaintiffs were not required to prove defendants acted pursuant to a custom or policy); Ganguly v. New York State Dept., Etc., 511 F.Supp. 420, 424 (S.D.N.Y.1981) (State is liable for the acts of their subordinates under the doctrine of respondeat superior as long as injunctive and declaratory relief is sought).

[14] The baseless filing goes from C to E.

24

assertions, but never mentioned Will states the above. So she skipped it for the real claims but then cited it for her bogus claim. Once again, as anybody with working vision can see the offenders damages are individually. Again she forced Plaintiff to spend, time, effort, and resources replying to a motion and phantom claims that should not have been filed. Once again for his reason this suit against these offenders does not represent a suit against the state or any state agency- even if it is one. Accordingly, for these reasons the real claims including punitive damages go forward.

## V. CONCLUSION

The complaint and claims have to go forward against all of the offenders and their filing labeled motion to dismiss should be denied in its entirety for all of the above reasons.

Dated: January 21st, 2015

J.C.
Box 934
Philadelphia, PA 19105

25



 **FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

**PHILADELPHIA ADULT PROBATION & PAROLE DEPARTMENT**

***QUESTION & ANSWER INFORMATION***

*What is PROBATION?*
Probation is an alternative to incarceration in which the offender is permitted to serve the entire sentence in the community, under the supervision of the Adult Probation / Parole Department (APPD).

*What is PAROLE?*
Parole is an alternative to continued incarceration in which the offender is permitted to serve the remainder of the sentence in the community under APPD supervision.

*Where is the Philadelphia Adult Probation Department located?*
1401 Arch Street (the corner of Broad and Arch Streets)
Philadelphia, Pennsylvania 19107

*How can I find out who my Probation/Parole Officer is?*
Call Probation Information at 215-683-1000
(Give your name and date of birth)

*What are SPECIAL CONDITIONS?*
Obligations imposed by the sentencing Judge which the offender must satisfy in order to complete their sentence

*What are some examples of Special Conditions of Probation/Parole?*
- Complying with APPD Rules & Regulations
- Pay Economic Sanctions
- Enter or attend Treatment
- Obtain a GED
- Submit to Drug Testing

*If I am in jail, what should I do once I am released?*
- Upon your release, report to APPD within 72 Hours.
  - o If already on Probation or Parole – report to your PO at 1401 Arch St.
  - o If you are not already assigned to a PO– report to the Probation Department Intake Unit, located in Room B-01 in the Criminal Justice Center (13th and Filbert Streets).

*The Judge ordered me to find employment, what should I do?*
- Discuss your employment goals and plans with your Probation Officer
- Request assistance in preparing for your interview
- Provide verification of the places you have contacted
- Ask your PO to intervene with a prospective employer who may have concerns regarding you criminal record.

*What if I am already employed, what should I do?*
- Provide regular verification of employment & work schedule
- Advise Officer of any employment, or work schedule changes
- If necessary, ask your PO for flexibility regarding your reporting time to allow for the minimal disruption of work hours.

*What are Economic Sanctions?*
Economic Sanctions are monetary obligations determined and ordered by the sentencing Judge. They can include:
- Fines/Costs
- Restitution
- Supervision Fees

Always pay Something, No matter how small

Economic Sanction payments can be made in person @
      Adult Probation/Parole Department
      1401 Arch Street
      Philadelphia, Pennsylvania 19102
      Attn: Accounting Unit
         -OR-
      Criminal Justice Center
      1301 Filbert Street
      Philadelphia, Pennsylvania 19107
      Attn: Accounting Unit

*What are the rules and regulations of a probation and parole?*
- You may not possess or carry a firearm or deadly weapon.
- You may not travel outside of Philadelphia without permission from your PO.
- Respond promptly to any summons to appear in Court.
- Notify your officer within 72 hours if any of the following occur:
  - A new arrest
  - A change of address
  - A change of employment
- You may be subject to random drug testing and home visits from your PO.
- You may be subject to attend a Life Skills Training course

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J.C.
          Plaintiff          :          Civil Action
                                        *15-4745*
v.                                       No. ~~13=4066~~

Ford, Et, al                :
          Defendant

## CERTIFICATE OF SERVICE

I do hereby certify that service of a true and correct copy of Plaintiff In Opposition To

Motion To Dismiss By Ford Et, Al In Their "Official Capacties" has been served upon the

following individuals by first class mail and made available by CM/ECF

Martha Gale
1515 Market St Ste 1414
Philadelphia, Pa 19102

                                        J.C.
                                        Box 934
                                        Philadelphia, PA 19105

Dated: January 25th, 2016