**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| J.C. | : Civil Action No. 15-4745 |
| | : |
| v. | : **Jury Trial Demanded** |
| | : |
| NICHOLAS FORD, STEFFEN BOYD, | : |
| JOSETTE SPRINGER, SHONDA WILLIAMS, | : |
| JOHN W. HARRISON, E. MARTINEZ, | : |
| STEVEN AUSTIN, DARLENE MILLER and | : |
| CHARLES HOYT | : |
| | : |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

**I.      INTRODUCTION**

All official capacity claims against the defendants were dismissed by this Court's Order,

an Order affirmed by the United States Court of Appeals for the Third Circuit.  The Circuit Court

remanded the matter to this Court for consideration of Plaintiff's claims against the defendants in

their individual capacities, only.  By its Order of January 6, 2017, the Court has afforded the

parties thirty days to brief "whether plaintiff can adequately state a claim against Defendants in

their individual capacity."  Defendants first address the Section 1983 claims against all

defendants except Defendant Ford, against whom plaintiff has, at least arguably, pled some

factual basis for a claim.  As to the remainder of the defendants, plaintiff has made only

conclusory statements of law, couched as facts, insufficient to meet his burden.  Defendants then

address the two state law claims of Plaintiff's Complaint, violation of Article I Section 8 of the

Pennsylvania constitution and violation of physician-patient confidentiality.  Finally, Defendants

address the Section 1983 claims against Defendant Ford, claims already under consideration by

the Honorable Gene E.K. Pratter, at Civ.A.No. 13-4066 and therefore subject to transfer under

the "first-filed rule", or outright dismissal, given Defendant Ford's qualified immunity.

## II.    LEGAL ARGUMENT:

### A.    Plaintiff Has Failed to Plead Evidence of a Constitutional Violation by Defendants Boyd, Springer, Williams, Harrison, Martinez, Austin, Miller or Hoyt

State officials sued in their individual capacities are "persons" for purposes of 42 U.S.C.

§ 1983. Hafer v. Melo, 502 U.S. 21, 23 (1991)

Claims of constitutional violations cannot be based on respondeat superior, and require

some level of personal involvement by an alleged offender.  To establish personal liability in a §

1983 action, Plaintiff must demonstrate that a government official, acting under color of state

law, caused the deprivation of a federally protected right:

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id., at 166. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. Id., at 166-167.

Hafer v. Melo, 502 U.S. 21, 25 (1991)(internal citation omitted).

Plaintiff has failed to plead involvement in a Constitutional Violation by Defendants

Boyd, Springer, Williams, Harrison, Martinez, Austin, Miller or Hoyt.  Choosing, as always,

general allegations to specifics, Plaintiff demands that these Defendants be held liable by virtue

of their titles, rather than by virtue of any action on their part.  While all claims against the

remaining Defendant, Officer Ford, should also be dismissed, should any such claims survive,

the fact remains that Plaintiff has at least made bold assertions against him.  In the case of Ms. Defendants Boyd, Springer, Williams, Harrison, Martinez, Austin, Miller or Hoyt, he has not even bothered.  Plaintiff's boilerplate accusations are insufficient to support a claim against these defendants.

Generalized claims of supervisory responsibility are insufficient to meet pleading burden. Diaz v. Rucker, 2016 U.S. Dist. LEXIS 100118  at *17 (E.D. Pa. July 9, 2016)  See also: Phillips v. Northampton Cnty., 2016 U.S. Dist. LEXIS 125448  at *19 (E.D.  Pa. Sept. 14, 2016).  The only mention of these individual defendants in plaintiff's complaint come at ¶¶ 12, 17, 18 and 25. These allegations are, at best, boilerplate.

At paragraph 12, Plaintiff alleges that Defendant Harrison mentioned that plaintiff had sued several members of the Probation Department.  (Ex A at 12)  Plaintiff does not allege that his probation was revoked as a result, nor that he suffered any other harm as a result.  It is merely plaintiff's allegation that his numerous other lawsuits "should never have been mentioned…", insufficient to meet his burden.

At paragraphs 17 and 18, Plaintiff alleges that Defendants Boyd, Austin, Martinez, Springer and Williams demanded an emergency telephone number from parolee, Plaintiff.  He claims that he left without providing one, but also notes at paragraph 21, that his lawyer's information served as the emergency contact.  Either way, plaintiff does not detail a constitutional violation by these defendants.

Finally, at paragraph 25, Plaintiff alleges that defendants Boyd, Austin. Miller and Hoyt are liable, merely because of their positions as supervisors:  "Boyd was at all times in this complaint Ford's direct supervisor.  Austin at all times in this complaint was Boyd's supervisor. Miller at all times in this complaint was the deputy chief of probation.  At all times [sic] was

Hoyt the "chief" of probation and is a policymaker." (Plaintiff's Complaint at ¶ 25). Plaintiff has also adduced no evidence that these defendants participated in a constitutional violation, acquiesced in a constitutional violation, such that their continued involvement in this case is appropriate. (See Santiago v. Warminster, 2010 U.S. App. LEXIS 25414, at * 27 (E.D. Pa. Dec. 14, 2010) ("To hold otherwise would allow a plaintiff to pursue a [claim]…merely by…appending the phrase 'and the chief told them to do it.' Iqbal requires more.").

The claims at Counts I through III of the Complaint against individual defendants, Boyd, Springer, Williams, Harrison, Martinez, Austin, Miller and Hoyt, should be dismissed from this matter for lack of personal involvement in an alleged constitutional violation.

### B. Plaintiff's Claim Pursuant to the Pennsylvania Constitution

At Count IV Plaintiff brings a claim against the individual defendants for violation of his rights pursuant to Article I Section 8 of the Pennsylvania Constitution. As there is no private cause of action pursuant to Article I Section 8, this claim must be dismissed as to all defendants:

> In Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Commw. Ct. 2006), the Commonwealth Court declined to create a cause of action for money damages under Article 1, Section 8. Id. at 1216. "[C]ourts in this District have extended the Jones reasoning to bar monetary claims under Section 1 of Article I of the Pennsylvania Constitution." "J.C." v. City of Philadelphia, 2:12-CV-4398, 2012 U.S. Dist. LEXIS 180830, 2012 WL 6645532, at *6 (E.D. Pa. Dec. 21, 2012)

Mintz v. Upper Mt. Bethel Twp., 2013 U.S. Dist. LEXIS 86460 at *18 (E. D. Pa. Jun. 20, 2013)

### C. State Tort Claim for Violation of Patient-Physician Confidentiality

At Count V of the Complaint, Plaintiff alleges that the actions of the individual defendants amounts to a state tort claim for a violation of "Physician-Patient Confidentiality" (Count V):

> The tort of breach of physician-patient confidentiality can readily be distinguished from the torts of appropriation of name or likeness, publicity given to a private life, and publicity placing the person in a false light. Indeed, the tort of breach of physician-patient confidentiality has nothing to do with appropriation or publicity in this case--either in a legal or colloquial sense. As a more general matter, it will be the rare circumstance where a physician decides to publish, publicize, or appropriate confidential medical information. See e.g., Doe v. Roe, 93 Misc. 2d 201, 400 N.Y.S.2d 668, 671,    N.E.2d    (N.Y. App. Div. 1977) (entering judgment in favor of a patient who's confidential information was published in defendant psychiatrist's book without patient consent and relying on a breach of confidentiality theory in doing so). Consequently, there seems to be a substantive distinction between these three categories of privacy liability and the tort of breach of physician-patient confidentiality, with the exception of the rare circumstance in which a physician takes the extraordinary measure of publishing a patient's confidential medical information without consent.

Burger v. Blair Med. Assocs., 2007 PA Super 164, 250 (Pa. Super. 2007).  Plaintiff does not allege, as indeed he cannot, that any of the individual defendants is his physician.  As such, his claim at Count V should be dismissed.

### D.     The "First Filed Rule"

Accepting for purposes of argument the dismissal of the state law claims and the other individual defendants, the Court is left to either consider the claims at Counts I through III against remaining individual defendant, Nicholas Ford, or transfer the matter to the Honorable Gene E.K. Pratter, at Civ.A.No. 13-4066 under the "first-filed rule":

> The first-filed rule counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." Chavez v. Dole Food Co., Inc., 796 F.3d 261, No. 13-4144, 2015 U.S. App. LEXIS 14027, 2015 WL 4732386, at *4 (3d Cir. Aug. 11, 2015); see EEOC v. Univ. of Penna., 850 F.2d 969, 971 (3d Cir. 1988) ("[The first-filed rule] gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."); Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases

of concurrent jurisdiction, the court which first has possession of the subject must decide it." (quoting Smith v. M'Iver, 22 U.S. 532, 536, 6 L. Ed. 152 (1824) (Marshall, J.))). The first-filed rule permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case. See, e.g., Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 456-57 (E.D. Pa. 2013). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." EEOC, 850 F.2d at 971; see Chavez, 2015 U.S. App. LEXIS 14027, 2015 WL 4732386, at *4.

Plaintiff's litigious nature is manifest in the courts of the Eastern District of Pennsylvania, and the Third Circuit. [1] Keeping with his promises in this action ("there is going to be an additional 12 suits in the next 24 years…13 more suits in the next 25 years…" Plaintiff's Complaint at ¶ 31) and others, plaintiff attempts through prolific filings to keep as many concurrent claims and defendants active as possible. In the present matter, his claims against Defendant Ford, are identical to those in a matter currently in civil suspense before Judge Pratter (Civ. A. No. 13-4066). While the matter could be transferred to Judge Pratter's Court under the First Filed Rule, defendant also addresses the claims against Defendant Ford, incorporating the record developed in Civ. A. No. 13-4066, and Defendants' Motion for Summary Judgment and accompanying Memorandum of law in support, to the extent the Court finds it relevant and appropriate for consideration.

## E. The Individual Defendant Is Entitled to Qualified Immunity

Citing the Supreme Court's ruling in Malley v Briggs, Courts have held:

> In Malley v. Briggs, supra, the Supreme Court addressed the issue of the degree of immunity accorded a defendant police officer in a damages action under 42 U.S.C. § 1983 when it was alleged that the police officer caused the plaintiffs to be unconstitutionally arrested by presenting a judge with a complaint and supporting affidavit which failed to establish probable cause. The Court held

---

[1] United States District Court for the Eastern District of Pennsylvania Civ A. Nos.: 08-0746, 08-3880, 11-5637, 12-4398, 13-4066, 15-4745; United States Court of Appeals for the Third Circuit Civ A. Nos. 10-3479, 13-3857. 13-3669, 14=1062, 13-4484, 16-1718.

that "[o]nly where the warrant application is so lacking in indicia
of probable cause as to render official belief in its existence
unreasonable," will the officer's shield of qualified immunity be
lost. <u>Malley</u>, supra, at   , 1098.

<u>Hill v. Oberdorf</u>, 1987 U.S. Dist. LEXIS 7294  (M.D.Pa. July 16, 1987) (Kosik, J.)

Defendant maintains that he is entitled to qualified immunity, for the taxing task of
supervising plaintiff, probationer "J. C."  Specifically, it is Plaintiffs' contention that he was
improperly subjected to administrative measures by the probation department, but must concede
that such measures were either required by his sentence, or otherwise permitted by the law.
Should it be determined that the supervision of "J.C." amounts to a constitutional violation, the
defendant is nonetheless entitled to qualified immunity.

The United States Supreme Court has held that qualified immunity serves to "insulate
government officials from liability for assumable damages when the discretionary conduct of
that official did not violate clearly established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The
standard for applying qualified immunity is an objective one.  The Supreme Court has instructed
that the inquiry must focus on the "objective reasonableness of an official's conduct as measured
by reference to clearly established law."  (<u>Id</u>.).

The Court further explained, "the contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing violates that right.  This is not to say
official action is protected by qualified immunity unless the very action in question has been
declared unlawful, but it is to say that the unlawfulness must be apparent."  <u>Anderson v.
Creighton</u>, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability.  As a
general rule, the issue of whether an official is entitled to qualified immunity should be

determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. Mitchell v. Forsythe, 472 U.S. 511 (1985).

In Hunter v. Bryant, 112 S. Ct. 534 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." Id. at 137. The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law. The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was "objectively reasonable" based upon the information in his possession at the time of the conduct of which plaintiff complained.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court explained why a court must conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, [] will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular [action] is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the qualified immunity defense.

Saucier, 533 U.S. at 205. If an officer did violate a clearly established right, the court must determine whether the officer "made a reasonable mistake as to what the law requires." Carswell, 381 F. 3d. at 242.

Further, the Supreme Court has recently held that the two step <u>Saucier</u> procedure is no longer mandatory:

> On reconsidering the procedure required in <u>Saucier</u>, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

<u>Pearson v. Callahan</u>, 2009 U.S. LEXIS 591, at *33 (U.S. Jan. 21, 2009).

Plaintiff's behavior, refusals to cooperate, aggression and profanity, all warranted a reasonable person in the position of the defendant to take the action he did in dealing with the plaintiff. It would not be apparent to an officer in the position of the Nicholas Ford that any action taken regarding plaintiff was unconstitutional. Plaintiff refers on his own reading of Probation Department regulations and case law to sustain his argument. For instance, Plaintiff's exhibit B2 includes two pages from the Probation Department Handbook. Contrary to plaintiff's assertions, the referenced material does NOT prohibit monthly urinalysis in the absence of a court order, it merely mandates it in the presence of such an Order: "Monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court." (Plaintiff's Exhibit B2) Further, Plaintiff frequently references conduct he believes was unfair, without identifying what would make it illegal. As an example, at paragraph 11, Plaintiff avers that he "demanded the latest perjured script Ford labels 'summary sheet' for an upcoming September 6th, 2013 hearing, Ford refused to give it him, claiming he should get it at the hearing. Plaintiff replied that is a violation of due process, Ford ignored this and still refused." (Plaintiff's Complaint at paragraph 11). The remainder of plaintiff's complaint contains similar averments that anything he wasn't provided on demand, amount to a due process violation. Setting aside the accuracy of plaintiff's assessment of the legality, it would not be clear to an official in the position of Probation Officer

Nicholas Ford, that refusing to accede to the every demand of probationer "J.C." amounts to a constitutional violation.  As such, the Defendant is entitled to Qualified Immunity and Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed with prejudice.

  **F.**  **Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Fourth Amendment Claim**

  Probation Officer Nicholas Ford administered three urinalysis drug screenings for controlled substances in connection with his supervision of Plaintiff's probation, on April 12, 2012, May 15, 2012 and October 25, 2012.  Plaintiff contends that these screenings were "illegal" and that Ford did not have a "reasonable suspicion" necessary to conduct them.

  It is well-established that probationers do not enjoy the same Fourth Amendment rights possessed by other citizens. Samson v. California, 547 U.S. 843, 850, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006); Griffin v. Wisconsin, 483 U.S. 868, 875-80, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987);  Jarvis El v. Pandolfo, 701 F. Supp. 98, 101 (E.D. Pa. 1988).  Probation restrictions are put in place "to assure that probation serves as a period of rehabilitation and that the community is not harmed by the probationer being at large."  Jarvis El, 701 F. Supp at 101. Supervision of probationers is required to ensure that these restrictions are being observed.  Id. Thus, for purposes of the Fourth Amendment, "the probationer has a reduced expectation of privacy and the government has a heightened need to monitor behavior."  U.S. v. Manuel, No. 07-177, 2007 WL 2601079, at *2 (E.D. Pa. Sept. 7. 2007) (*citing* United States v. Knights, 534 U.S. 112, 119 (2001); United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005)). "Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."  Griffin v. Wisconsin, 483 U.S. 868, 875 (1987).  Accordingly, a probation officer generally only needs "reasonable

suspicion" of criminal activity to conduct a search of a probationer. <u>Manuel</u>, 2007 WL 2601079, at *2.

Moreover, it has been held, specifically in the context of drug screening of probationers, that "a probationer's fourth amendment rights were not violated by urine testing employed by a probation officer to determine whether probationer was using drugs in violation of probation conditions." <u>Hadden v. Jacobs</u>, No. 90-0759, 1990 WL 26677, at *1 (E.D. Pa. Mar. 12, 1990). "Urine testing furthers a legitimate governmental interest of rehabilitating prisoners and enforcing the law and, therefore, is not an unreasonable intrusion of plaintiffs' privacy rights." <u>Id</u>.

Warrantless urine testing of a probationer where he is specifically prohibited from using illegal drugs during the probation term is permitted because urine testing is "narrowly tailored to determine whether [the probationer] was using drugs and was less intrusive of [his] privacy than other methods of monitoring, such as continuous surveillance or repeated searches of [his] home and property." <u>United States v. Duff</u>, 831 F.2d 176, 179 (9th Cir. 1987). In <u>Duff</u>, the Ninth Circuit held that the probation officer had a reasonable suspicion to conduct urine testing where the probationer, among other things, was not gainfully employed and had consistently failed to meet with or cooperate with the probation officer. <u>Id</u>. Further, while plaintiff insists that Officer Ford and the other defendants are permitted only to perform acts as found in the policy manual for their Department, the law actually provides agents such as Officer Ford with a wider ability to act beyond the manual. <u>Commonwealth v. Elliott</u>, 616 Pa. 524, 50 A.3d 1284, 2012 Pa. LEXIS 2088 (2012). While such rights are not without limit, plaintiff's contention that any act not prescribed specifically by the policy manual is forbideden, is unsupported by the law.

Finally, the matter of searches of an individual like the plaintiff, who is under the department's supervision, is also governed by state law:

§ 6153. Supervisory relationship to offenders.

(a) General rule. --Agents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and re-assimilation into the community and to protect the public. Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society.

(b) Searches and seizures authorized.

(1) Agents may search the person and property of offenders in accordance with the provisions of this section.

(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

(c) Effect of violation. --No violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding.

(d) Grounds for personal search of offender.

**(1) A personal search of an offender may be conducted by an agent:**

**(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;**

**(ii) when an offender is transported or taken into custody; or**

**(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.**

…

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such

12

case law, **the following factors, where applicable, may be taken into account:**

> **(i) The observations of agents.**
>
> **(ii) Information provided by others.**
>
> **(iii) The activities of the offender.**
>
> **(iv) Information provided by the offender.**
>
> **(v) The experience of agents with the offender.**
>
> **(vi) The experience of agents in similar circumstances.**
>
> **(vii) The prior criminal and supervisory history of the offender.**
>
> **(viii) The need to verify compliance with the conditions of supervision.**

61 Pa.C.S. § 6153 (2014)(emphasis added)

Pennsylvania law, while recognizing that a convicted felon does not give up all his rights by accepting probation or parole, also recognizes the likelihood of such a person to violate the law, and the needs of the probation and parole department to supervise such an individual "to protect the public…" Id. See also: 61 Pa. C.S. 6102(2)("In providing these benefits to the criminal justice system, the board and any other paroling entity shall first and foremost seek to protect the safety of the public.")   Plaintiff's take on his behavior before that supervision, is that he was merely excercising his right to speak his mind.  Even as pled, the Complaint establishes reasonable suspicion for drug testing, given plaintiff's undeniably bizarre and aggressive behavior, and the likelihood that such behavior was drug-induced.   The observations of Officer Ford, the information provided in plaintiff's probation file by his previous contacts in the system, his refusals to cooperate, and the needs of the department to assure that plaintiff was actually remaining drug free on probation, all provided the reasonable suspicion necessary to have him drug tested.

In this case, dismissal is warranted on Plaintiff's Fourth Amendment claim because there exist no genuine issues of material fact as to the fact that plaintiff was a probationer, was subject to the supervision of the probation department, and was subject to urinalysis as part of that supervision. Under the Rules of Probation and Parole in the APPD, Plaintiff was prohibited from unlawful possession, use, sale or distribution of controlled substances of any kind, an indisputable fact. Plaintiff was drug-tested three times – on his first visit with Mr. Ford in April 2012, on his second visit in May 2012, and then again five months later in October 2012. Throughout Mr. Ford's supervision of Plaintiff, Plaintiff was non-cooperative, confrontational and belligerent toward APPD staff, an unassailable fact lent substantial credence by Plaintiff's actions before numerous courts in the eastern district. Under these circumstances, Plaintiff has not plead, and cannot establish as a matter of law, that Mr. Ford did not have a reasonable suspicion to conduct the drug tests of Plaintiff to determine his compliance with the prohibition against drug use. While plaintiff attributes an evil motive to his probation officer in requesting the tests, that motive is immaterial in the analysis of whether reasonable suspicion existed at the time the tests were done. See: United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005)

Plaintiff established neither that his constitutional rights was violated by the drug screenings, nor that there existed a clearly-established prohibition of random urinalysis drug screening of probationers – who are plainly prohibited from any and all unlawful use of controlled substances – that Mr. Ford somehow violated. Plaintiff does not enjoy the status of every other citizen as he seems to imply. He was released from prison with conditions including drug testing to assure his compliance with the terms of his probation, and aid in his reacclimation to society. He has chosen at every turn to demand greater protection than he is entitled to as a matter of law when it comes to measures far less intrusive than that to which he would be

subjected to in prison, or in a search of his residence.  He offers the court nothing beyond his own conclusions as support for his claim.  Thus, dismissal with respect to Plaintiff's Fourth Amendment claim, is appropriate.

### G.   Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's First Amendment Claim

Plaintiff's Complaint characterizes a number of acts by the Defendants related to Plaintiff's probation as retaliation for Plaintiff's alleged exercise of his First Amendment right to file grievances.  Plaintiff is clearly inclined to characterize any action by Defendants with which he remotely disagrees as "retaliatory."  To the contrary, the Defendants oversaw Plaintiff's probation in a proper, lawful manner.

"Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts **if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right**."  Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (emphasis added) (citations omitted).  "'Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, *and the nature of the retaliatory acts*.'"  Brennan v. Norton, 350 F.3d 399, 418-19 (3d Cir. 2003) (*quoting* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)) (emphasis in original).  In the context of retaliation complaints by prisoners, it has been held that a prisoner must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citations, internal quotation marks and parenthetical omitted).  Courts view prisoners' retaliation

complaints with sufficient scepticism so as to avoid becoming entangled in disciplinary actions against prisoners.  Mearin v. Dohman, No. 06–4859, 2013 WL 1187050, at *5 (E.D. Pa. Mar. 21, 2013).

A First Amendment retaliation claim requires the plaintiff to demonstrate that the protected speech was a substantial or motivating factor in the alleged retaliatory action.  Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  To establish the requisite causal connection, a plaintiff usually must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  In the absence of that, the plaintiff must show some facts from which a trier can infer causation.  Lauren v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff's Complaint characterizes all manner of events that occurred during Plaintiff's probation supervision in 2012 and 2013, from the change in Plaintiff's reporting time to weekly (which did not go forward), to urinalysis drug screenings, the scheduling of various hearings with respect to Plaintiff's probation, and the issuance of an Arrest Warrant Warning, as retaliatory for Plaintiff's filing of grievances with Mr. Ford and his supervisors.

For instance, Mr. Ford attempted to change Plaintiff's reporting time to weekly meetings upon meeting him not to "retaliate," but because Mr. Ford wanted to follow up promptly with Plaintiff to assure that he obtained housing and other needed services.  Indeed, Plaintiff concedes in the Complaint that the change took place before he ever 'grieved' any condition. The urinalysis drug screenings were conducted in the ordinary course of probation supervision, to assure Plaintiff's compliance with the rules of APPD.  Further, the September 28, 2012 Arrest Warrant Warning sent to Plaintiff was not "retaliatory," but was prepared solely because Plaintiff failed to failed to check in with Mr. Ford for his required probation report, either in court or in the APPD

offices. And, the public record shows that the various status hearings which were scheduled (but often postponed for a variety of reasons, including at Plaintiff's request) with respect to Plaintiff's probation were not arranged to retaliate for any grievances, but to allow the court overseeing Plaintiff's probation to evaluate his case, including Plaintiff's contention that supervision of his probation should not have been assigned to the Mental Health Unit of the APPD.

Plaintiff's First Amendment retaliation claim is based on naked, factually unsupported assertions of a "witchhunt" against Plaintiff on the part of the Probation Officer Defendants. Plaintiff has not established that any of the claimed "retaliatory" actions were causally linked and substantially motivated by any exercise by Plaintiff of his First Amendment rights. Plaintiff also hasn't shown that the alleged actions were sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Indeed, Plaintiff clearly hasn't been deterred, and continues to raise grievances and threaten to continue litigation against the Defendants for years to come. Plaintiff has demonstrated to this court that his persecution complex is not limited to his probation officers, but applies to every human being with whom he has contact. Absent some evidence beyond plaintiff's paranoia, that the individual defendants took any action to punish plaintiff for free speech, his claim must be dismissed.

### H. Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Due Process Claim

Defendant Ford is entitled to judgment as a matter of law on plaintiff's procedural due process claim, which is based on his receipt of allegedly inadequate notice of certain probation-related appointments and hearings. Not only does the complaint establish that Plaintiff was provided with appropriate notice of probation-related events whenever required, Plaintiff's claim fails in its entirety because he has not alleged that he was deprived of any life, liberty or property

interest clothed in procedural due process protections. (See: Memorandum and Opinion of the Court, Civ.A.No. 13-4066, Docket #67 at page 28: "Without a loss of liberty, there can be no affront to due process…") Mr. Colurra has not pled, as indeed he cannot, that his probation was ever revoked. As such, his due process claim fails as a matter of law.

To state a claim for violation of procedural due process rights, a plaintiff must allege: (1) that he or she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available did not provide the plaintiff "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). "Due process requires that a deprivation . . . 'be preceded by notice and opportunity for hearing appropriate to the nature of the case,' and the opportunity to be heard must be at a meaningful time and in a meaningful manner." Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 680 (3d Cir. 1991), *cert. denied*, 503 U.S. 984 (1992) (citations omitted). "A violation of procedural due process requires that a decision be made pursuant to a constitutionally deficient procedure, and not merely that a decision be made wrongfully." Pellegrino Food Prods. Co. v. City of Warren, 136 F.Supp.2d 391, 402 (W.D. Pa. 2000). At a minimum, due process requires notice and a hearing. Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Adequate process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

Moreover, to allege a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must demonstrate an actual deprivation of a life, liberty or property interest. Ass'n N.J. Rifle & Pistol Clubs v. Governor of N.J., 707 F.3d 238, 241 (3d Cir. 2013); Rodrock v. Moury, 379 F. App'x 164, 166 (3d Cir. 2010). Where there has been no deprivation of a constitutionally

cognizable interest, a procedural due process claim fails. <u>Ass'n N.J. Rifle & Pistol Clubs</u>, 707 F.3d at 241.

Plaintiff has not alleged evidence of a deprivation of any life, liberty or property interest by the individual Defendants. Indeed, Plaintiff's probation was never revoked. Plaintiff has not alleged evidence of any conceiveable deprivation of a life, liberty of property to support his due process claim. Thus, even if Plaintiff was not provided adequate notice and an opportunity to be heard –he cannot prevail, as a matter of law, on a Fourteenth Amendment procedural due process claim.

### I.  <u>Conclusion</u>

Plaintiff stands before the court a convicted felon on probation, who chooses to rail against the system and all its members, rather than develop evidence to support his claims. While his pro se status does nothing to limit his constitutional rights, it gives him no lesser burden of proof, either. His endless rants are entitled to no evidentiary weight, and his claims should be dismissed with prejudice.

For these reasons, Defendants respectfully request that the Court grant their Motion to Dismiss, and dismiss the claims against Defendants in their individual capacities, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: _s/Christopher Boyle_
CHRISTOPHER BOYLE, ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Defendants

DATE:  February 6, 2017
LEGAL/108697493.v1

## CERTIFICATE OF SERVICE

I, CHRISTOPHER BOYLE, ESQUIRE, do hereby certify that a true and correct copy of Defendants' Supplemental Memorandum of Law in Support of Their Motion to Dismiss Pursuant To F.R.C.P. 12(b)(6), was electronically filed with the Court on February 6, 2017 and is available for viewing and downloading from the ECF System. All counsel of record was served via electronic notification.  Same was forwarded to Plaintiff, "J.C.", via first class mail, to the below listed address:

"J.C."
P.O. Box 934
Philadelphia, PA 19105

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY:   s/ Christopher Boyle
CHRISTOPHER BOYLE, ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Defendants

DATE:  February 6, 2017
LEGAL/108697493.v1