## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.C. individually, and all others similarly situated, | : | Civil Action |
| Plaintiffs | : | No. 15-4745 |
| v. | : | |
| Nicholas Ford, Steffen Boyd, Josette Springer, Shonda Williams, John W. Harrison E. Martinez, Steven Austin, Darlene Miller, Charles Hoyt, | : | |
| Defendants | : | |

**FILED**
FEB 10 2017
By KATE BARKMAN, Clerk
Dep. Clerk

**RECEIVED**
FEB 10 2017

## BRIEF OF PLAINTIFF IN OPPOSITION TO SUA SPONTE DISMISSAL

## I. STATEMENT OF QUESTIONS PRESENTED

Should This Total Excuse of Court Illegally Dismiss The Complaint Sua Sponte?

Answer: No

## II. STATEMENT OF FACTS

Plaintiff filed this suit on August 19th, 2015 and all of the offenders were properly served December 17th, 2015.  A bogus sua sponte dismissal was issued in January before it was time before Plaintiff to reply to one offender and another not even responding. The case was reversed and remanded in December of 2016.

The full factual account appears on the complaint and should be duplicated word for word on any upcoming filing purporting to be making decisions on this case. A condensed version will appear here. A lawsuit was filed against the majority of offenders in this complaint, in mid- July 2013, they were notified. They then launched a terrible

campaign of illegal retaliation, other federal and state rights were trampled on as well. On August 22nd, 2013 Plaintiff went in for his first office visit with Ford since the protected activity of filing the lawsuit and also the relaying of it. Right away the punishment began as Ford immediately throws a tantrum about the lawsuit, demanding Plaintiff drop the suit, declaring he would tell the judge in an effort to punish Plaintiff and get him sanctioned, gave Plaintiff a retaliatory completely random, warrantless, suspicionless urine test/ search to take.

In addition to being pure retaliation, it is also a violation of the Fourth Amendment, Plaintiff never had that condition, was never ordered by any court, their own policy said it can't be done if not, it was completely random, violation of decades worth of binding law.  Also in that same meeting Ford refused to give Plaintiff his latest perjured script labeled a "summary sheet". At a September 6th, 2013 hearing, John W. Harrison retaliated against Plaintiff's Sixth (and First) Amendment right "Oh he's not going on without an attorney" referencing Plaintiff's right to counsel. He continued to try to have Plaintiff sanctioned/penalized because he simply wanted to wait until his legal representation arrived. Ford made good on his earlier threats as Harrison telling the robeowner, "He sued his p/o, he sued the supervisor, he sued the supervisor's supervisor", in an effort to get him punished, sanctioned.

In addition to all of this Ford never gave Plaintiff the perjured script he refers to as a "summary sheet" for this September 6th, 2013 probation hearing, Plaintiff never received it before hand, during the hearing, or afterwards. He got a copy of the fantastical sheet almost two years later. In addition to being part of the campaign of illegal retaliation, it was also a violation of due process. Then on September 13th, 2013, Ford continued his

1

campaign of illegal retaliation by planning and attempting to perform another retaliatory, illegal, unreasonable search. Ford went to Plaintiff's residence and literally starting punching the door, not knocking, punching. Ford literally punched the door for a solid 30 minutes, at couple of different points, he screamed off the top of his lungs (Victim's first name) in the middle of the street, causing a disturbance. Ford terrorized the person inside as well as the neighborhood in general.

On September 19th, 2013 Plaintiff arrived on time for a 3:00 office visit. For reasons never known, Ford made Plaintiff wait a long time, then finally called him, so it was already much later when he walked in the booth. Ford speaks about the above September 13th, 2013, retaliatory search. He admitted he wanted to search the residence despite never attempting to prior to this, he had only visited one-time prior, seven months prior-long before he found out about the suit against him. In that visit, in which again took place before the suit was filed, Ford was not nearly as aggressive nor did he request to do a search. All of the sudden, after he found out he was being sued, he then did the above.

He eventually brought up the lawsuit asked about it and if Plainitiff was going to end it, to which Plaintiff replied no to the latter, he was attempting to find proper service address. Ford then launched into a tirade, demanding Plaintiff drop the lawsuit, Plaintiff said no, he won't be bullied. Ford then said he would get the d.a. to file charges against Plaintiff if he did not drop the suit. Plaintiff told Ford that this is illegal and said it would lead to more trouble for him. Ford at that point, said I am calling them now (d.a.) (in a effort to get him punished, sanctioned) and screamed "get out"! Then he picked up the phone and started dialing. Plaintiff at that point again warned him again this is illegal, which in turn Ford screamed even louder GET OUT! It wasn't a real shock Ford gave

2

falsified accounts on the above on perjured scripts he calls summary sheets and what is purported to be internal notation that Ford authored in which Plaintiff posseses. Shortly after this, the offenders continued with their retaliation right after they were served with the above lawsuit on November 7th, 2013. The offenders including Ford, Boyd, Austin planned out their latest punishment, this time using co-workers.

On November 14th, 2013, Plaintiff went in for an office visit and a E.P. Martinez, who he never saw before, was the p/o, right away it was clear Martinez was on an agenda. Right from the start, she was abrasive and aggressive- for no reason, and she interrogated Plaintiff about things that were not relevant. Shortly in, Plaintiff said he knew what this was really about, they just got a lawsuit. Martinez glanced at Plaintiff like she knew it was coming, then glanced back at the computer not commenting on that statement, it looked like she was following step by step instructions. Martinez continued her behavior, trying desperately to manufacture an issue. She then claimed their emergency contact was old and she demanded what she thought was a newer one, in a very confrontational manner. Plaintiff stated he did not wish to give a newer one, whatever they have should be sufficient.

With this Martinez achieved her whole goal, as she then escalated her already combative behavior, to assert Plaintiff had to give a (purported) newer emergency contact. Plaintiff stated that he was well within his rights, he does not have to give one and is not and he mentioned that there is no rule or regulation anywhere stating he does, no law or case law. Martinez then asserted Plaintiff had to give her one "or else". Plaintiff again repeated what he had said. She then said "I am getting the supervisor". Plaintiff said just give me my next reporting date so I can go. In a commanding and

3

authoritative tone Martinez said "no stay here".  A reasonable person would have known they were not free to ignore the command, just leave the building and continue with their business of the day, this includes the fact that the card was not signed and given a new date. Almost like it was rehearsed, on cue, not one, but two out of control, mouthy female supervisors, Josette Springer and Shonda Williams, come into the booth and immediately explode into a tantrum. Martinez comes back into the booth as well, so it is the three of them and their one victim. Again, Plaintiff knew they just got served with a lawsuit so it was not a huge surprise.

Springer and Williams are yelling at Victim in a loud, threatening intimidating tone, demanding Plaintiff give what they felt was a newer emergency contact. Plaintiff again repeated he did not wish to give a newer one, whatever they have should be sufficient, he was well within his rights, no rule or regulation anywhere stating he does, no law or case law, he does not have to give one and is not. Springer and Williams then told Plaintiff, they don't care what is in the rules, he could not go anywhere unless he gave one. Plaintiff stated they could not do that, it's illegal, and they will get sued. They responded if Plaintiff does not give them one then, then Plaintiff would go to jail. Note, this meant Plaintiff would be there for about 40 days until a detainer hearing which would have been prolonged for a next available date due to limited availability of the robeowner assigned to the case. Plaintiff said no this is illegal and attempted to leave but Springer stopped him. Plaintiff again repeated the above, and they have no right to imprison him.  Springer and Williams again said Plaintiff was going to jail if he did not provide them with one.

4

Plaintiff did not have to but he gave them an attorney's name. Again, Plaintiff would have basically spent 40 days in jail until a detainer hearing. Later on, after the attorney's name was given in the debacle that day, Springer conceded Plaintiff was right, it is not in the rules or regulations, any law but still tried to assert basically she could do whatever she wanted, she can't and Plaintiff emphasized that again. Again, during this encounter, Plaintiff was without question illegally seized, they did not have any objective reasonable suspicion that Plaintiff was engaging in criminal activity or was in violation of probation in any way- in which they still could not seize him on the spot to begin with. Again, they had *Plaintiff*'s contact information, he did not have to give any emergency contact, or what they purported to be a newer one. This is perfectly legal and not grounds for any violation technical or otherwise[1].

Of course they gave a completely falsified account as to what happened, not a shock. One bogus account came from Ford, despite him not being there at all that day!  They are going to say Ford was not even Plaintiff's p/o on this date, not only this but he was not even in the same unit as Plaintiff, or floor. Yet he somehow made a (phony) entry for a meeting/seizure/imprisonment that took place with three other people. On May 30th, 2013,  Nicholas Ford, first knowingly and intentionally violated Plaintiff's physician-patient confidentiality. Ford knowingly and intentionally acquired Plaintiff's private, confidential, federal and state protected  medical records from a certain unnamed practice. In addition to acquiring this protected information over the phone, Ford was so

---

[1] Moreover, as the two big mouths are familiar with, and everybody else there, the proper procedure when they actually have probable cause someone violated probation, is to send a request to the post-trial unit in CJC, asking for a vop hearing/Gagnon I. They do not have authority to detain and/or imprison people on the spot for real violations, like not reporting, failed drug tests, so on. Likewise they do not have the authority to detain and imprison because someone didn't give them what they allege is a newer emergency contact.

5

eager to retaliate and also violate federal and state health laws, that he provided a fax number and facilitated the protected information/ records/ documents to be faxed in. Ford full well knew that what he was doing was illegal, Plaintiff never gave anyone consent, never waived any privilege at any time for any one. Instead of saying to himself, and/or to anyone else for that matter, wait a minute I should not be violating state and federal law, let me not do this, he chose to violate the law- yet again.

Ford then subsequently published this protected information and gave it to more and other third parties, numerous people like other employees of probation including Boyd, district attorney's office, and the court system. He did it again on with a September 6th, 2013 dated document. As a result of Ford's illegal and malicious publishing, numerous people saw and also have Plaintiff's protected, confidential medical information/records/documents. Obviously, he never had any type on consent to do that as well. He continued his violations, in March of 2014, when he then gave the information/records/documents to a purported law firm including two supposed employees, numerous others they refer to as employees that worked on the case saw and have these.  Obviously, he never had any type on consent to do that as well.

Ford caused the information/records/documents to be filed in the Eastern District, where somebody who purchased a robe saw it and has it, probably gave it to numerous others, also this person's staff  masquerading as clerks and whatnot saw it and have it, as part as permanent file that can be accessed by pretty much anyone there for years to come. Obviously, he never had any type on consent to do that as well. Ford's violations continued in January of 2015, where he caused to give  information/records/documents to another purported law firm and a supposed employee, numerous others saw and have

6

this. Obviously, he never had any type on consent to do that as well. Here Ford's conduct is part of a continuing practice that continues through today.

Also falls under F.A.retaliation as well. Boyd, Austin, Miller, Hoyt, among many things, failed to properly supervise, discipline, control, train and acted with deliberate indifference to the needs of Plaintiff and other victims and all of which caused direct harm to this victim and all others similar situated.They also participated in violating plaintiffs rights, directed others to violate them, all had knowledge of and acquiesced, approved, ratified the illegal behavior.

### III. RULE 12 (b) 6 STANDARD

Plaintiff notes this is the standard when a motion to dismiss is actually filed not when a total excuse of a court illegally for a second time tries to sua sponte dismiss a complaint. The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). They clearly have not done so. In addition, the "burden is on the [an offender] to demonstrate the constitutionality of its actions." Startzell v. City of Phila.,533 F.3d 183, 201 (3d Cir.2008). They clearly cannot ever do so. Generally, when rendering a determination as to whether to dismiss a claim filed under Rule 12 (b) (6) of the Federal Rules of Civil Procedure, the Court tests the sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). "A pleading must be sufficient enough to enable the court to make out the potential viable threats theories upon which the complaint is based." Hicks v. Arthur, 843 F. Supp. 949, 959 (E.D. Pa.1994).

In determining the sufficiency of the complaint filed by a pro se Plaintiff, courts must be mindful to construe it liberally in favor of the plaintiff. See Erickson v.

7

Pardus, 551 U.S. 89, 93-94 (2007) (liberal pleading dictates that, particularly in the context of a pro se complaint, such allegations be deemed sufficient). See also Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir.1997) (same). The rule of liberal construction is "particularly important in civil rights cases."Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000). Courts must therefore "accept as true all of the facts in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Petruska v. Gannon University, 462 F.2d 294, 299 (3d Cir. 2006) (for purposes of a motion to dismiss, a federal court must accept as true the plaintiff's factual allegations); Albright v. Oliver, 510 U.S. 266, 268 (1994).

A federal court also must treat mixed question of law and fact as true drawing all reasonable inferences in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64 (D.C. Cir 2003). All "doubtful questions" are to be resolved in favor of the plaintiff. Gray v. Occidental Life Ins. Co. of Cal., 387 F.2d 935, 936 (3d Cir. 1968); Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). Further, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant[s'] conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."Common Cause Of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257 (3d. Cir. 2009. Legal conclusions provide the framework of a complaint if they are supported by factual allegations as they most certainly are here. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action. Since this is a § 1983 action, the plaintiff is entitled to relief if his complaint sufficiently alleges deprivation of any right secured by the Constitution. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). Under Rule 12(b)(6) the Third Circuit asks, "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Institutional Investors Group v. Avaya, Inc.564 F.3d 242, 252 (3d Cir. 2009).

A Rule 12(b)(6) motion will only be granted "'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); H. J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989).[2] Plaintiff realizes there is a circuit split, he uses the Seventh Circuit's correct law on the issue, but he has met any alleged higher pleading standard this circuit might have adopted. "The issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claim." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000). See also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (In reviewing a 12(b)(6) motion, "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely

---

[2] Any alleged higher standard set forth in Twombly and Iqbal only applies "to highly complex cases", which we certainly don't have here. Smith v. Duffy, 576 F.3d 336, 339-40 (7th Cir. 2009); Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th Cir.2009) ("Our system operates on a notice pleading standard; Twombly and its progeny do not change this fact.")

9

because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Reasonable inferences must be drawn in favor of the plaintiff ").

Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. v. Woodmont Builders, LLC, 244 Fed. Appx. 514, 517 (3d Cir.2007) (quoting Twombly, 127 S.Ct. at 1969). "A well pleaded complaint may proceed even it appears that a recovery is very remote and unlikely" Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1965 (2007). In addition, "a complaint states a claim on which relief may be granted whether or not some defense is potentially available... Resolving defenses comes after the complaint stage." U.S. v. Northern Trust Company, 372 F.3d 886, 888 (7th Cir. 2004).

To evaluate a motion to dismiss courts consider the facts relayed in complaint, exhibits attached to the complaint, documents incorporated into the complaint by reference. Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007).

## IV ARGUMENT

### A. Fourth And Fourteenth Amendment

In regards to illegal August 22nd 2013 search and subsequent attached seizure, not only did Plaintiff make a claim he is entitled to judgment as a matter of law. Factually we know that the record shows it was a (retaliatory) random, warrantless, suspicionless (as part of a policy custom pattern, practice), see Comp exb "A". Also we know Plaintiff never had any valid judicial condition to begin with. See Comp exb "C". That make his claim right there. Even in a case where somebody does actually have the condition this

10

searches here is so illegal that they still would be illegal[3]. All of these cases also reaffirm "parole" (here county probation), "is not so broad in scope as to permit total disregard for the panoply of a parolee's [F]ourth [A]mendment rights." Commonwealth v. Edwards, 400 Pa.Super. 197, 583 A.2d 445 (1990) Commonwealth v. Berry, 265 Pa.Super. 319, 324, 401 A.2d 1230, 1232 (1979).  Yet again they reaffirmed this long running rule of law in Commonwealth. v. Wilson, 67 A. 3d 736 (Pa. May 28th, 2013), and also ruled that not even sentencing courts can direct that a probation officer may conduct warrantless, suspicionless searches of a probationer. A judge can't do it, BECAUSE IT'S ILLEGAL.

Obviously the same thing has been clear here for at least 30 years as well. United States v. Hill, 967 F.2d 902, 907-11 (3d Cir. 1992). Then we have United States v. Baker, 221 F.3d 438 , 443-45 (3d Cir. 2000).  The searches are illegal ill-defined fishing expeditions falling far short to establish reasonable suspicion of criminal or illegal activity, the first reason is because it says so right on it and they agree. As held squarely in Baker,  "Pennsylvania law does not license such fishing". U.S. V. Rivera, 727 F. Supp. 2d. 367, 376 (E.D.PA 2010). He prevails as a matter of law. In addition to all of this, Plaintiff was seized, for the entire time which usually takes 60-90 minutes because he

---

[3] In addition to the statute it has been clear for 30 years. Commonwealth v. Edwards, 400 Pa.Super. 197, 583 A.2d 445 (1990) (holding warrantless searches on parolees must at minimum be based upon reasonable suspicion of illegality). In Commonwealth v. Pickron, 535 Pa. 241, 634 A.2d 1093 (1993). PA again held that the Fourth Amendment does not permit the determination to conduct a search of a probationer or parolee to be left to the unfettered discretion of the individual officer. Rather, "some systemic procedural safeguards must be in place" to guarantee Fourth Amendment rights." Id. at 1098. ; Commonwealth v. Altadonna, 817 A.2d 1145, 1149 (Pa. Super. 2003) (holding that supervisee is not subject to diminished expectation of privacy regarding searches of supervisee's person; probation officer must have reasonable suspicion to seize and search probationer). We hold that reasonable suspicion is indeed required in such a case, that it was lacking here, and that the search conducted was therefore improper." In the Interest of J.E., 937 A.2d 421, 422 (Pa. 2007) (warrantless search of PA probationer was illegal because there must be reasonable suspicion and it was not there). See Commonwealth v. Alexander, 16 A.3d 1152, 1156 (Pa.Super.2011) (en banc) ( There must be "reasonable suspicion present in order to protect a probationer's state and federal constitutional right to be free from unreasonable searches"). See also Commonwealth v. Galendez, 27 A.3d 1042, 1048 (Pa. Super. 2011), Commonwealth v. Hunter, 963 A.2d 545 (Pa. Super. 2008); Commonwealth v. Colon, 31 A.3d 309, 314-15 (Pa. Super. 2011).

was not free to leave the building unless he did produce his bodily fluids. It is a violation of probation to leave without giving the fluids up.  It is a governmental termination of freedom of movement through means intentionally applied. Any reasonable person knows or should know that given this longtime policy, they are not free to ignore the search, just leave the building and continue with their business of the day. Plaintiff was unlawfully seized that day for 80 minutes, without a warrant, without any reasonable suspicion. He prevails as a matter of law on this, making it an even bigger and more illegal Fourth Amendment claim.

The November 14th, 2013 seizure obviously makes out claims under this section (in addition to f.a.). A seizure occurs under the Fourth Amendment "when there is a governmental termination of freedom of movement through means intentionally applied." See Scott v. Harris, 550 U.S. 372, 381 (2007) (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). A person is seized if, in light of all the surrounding circumstances, agent conduct would communicate to a reasonable person that he was not free to ignore the police presence and continue with his business. See Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (citing Kaupp v. Texas, 538 U.S. 626, 628 (2003)).

Again, during this encounter, Plaintiff was without question seized, there was governmental termination of freedom of movement through means intentionally applied. This includes the facts of 1)  threatening presence of not one, not two, but three what they refer to themselves as officers 2) could not be stronger show of authority, loud, threatening intimidating tone, direct commands/words that compliance must be compelled  the use of words or a tone of voice suggesting that compliance with the

12

officer's request might be compelled. A person need not make an attempt to leave in order to be seized. United States v. Mendenhall, 446 U.S. 544, 554 (1980). But here Victim did. Here there was no guessing, Plaintiff knew he was not free to leave. Any reasonable person would not try to escape. In addition, after he was already seized, he was threatened with more long term seizure.

They did this even though they did not have any reasonable suspicion that Plaintiff was engaging in criminal activity[4]. They didn't even have reasonable suspicion that Plaintiff violated his probation in any way. Again, they had Plaintiff's contact information, he did not have to give any emergency contact, or what they purported to be a newer one. This is perfectly legal and not grounds for any violation technical or otherwise. Moreover, as the two big mouths are familiar with, and everybody else there, the proper procedure when they actually have probable cause someone violated probation, is to send a request to the post-trial unit in CJC, asking for a vop hearing/Gagnon I. They do not have authority to detain and/or imprison people on the spot for real violations, like not reporting, failed drug tests, so on. Likewise they do not have the authority to detain and imprison because someone didn't give them what they allege is a newer emergency contact.

An officer "may not lawfully order someone to stop unless the officer reasonably suspects the person of being engaged in illegal activity." United States v. Jenkins, 452 F.3d 207, 212 (2d Cir.2006); Swartz v. Insogna, 704 F. 3d 105, 110 (2d Cir. 2013).

---

[4] Note there is no lower threshold here than anywhere else. Commonwealth v. Altadonna, 817 A.2d 1145, 1149 (Pa. Super. 2003) (reaffirming that supervisee is not subject to diminished expectation of privacy regarding searches of supervisee's person; probation officer must have objective reasonable suspicion to seize and search probationer); See also Commonwealth v. Gayle,449 Pa. Super. 247, 673 A.2d 927, 932 (1996) (probationers do not have diminished expectation of privacy involving stops and seizures).

13

"The Fourth Amendment, of course, applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." Brown v. Texas, 443 US 47, 51 (1981); Davis v.Mississippi, 394 U.S. 721 (1969); Terry v. Ohio, 392 U. S. 1, 16-19 (1968). A person "may not be detained even momentarily without reasonable, objective grounds for doing so" Florida v. Royer, 460 U.S. 491, 98 (1983); United States v. Mendenhall,  446 U. S. 544, 556 (1980).

The September 13th, 2013, terrorizing not just Plaintiff's residence but the whole neighborhood, is also a violation in this section (as well f.a.). In regards to Ford's retaliation never giving  Plaintiff the perjured script he refers to as a " "summary sheet" for this September 6th,  2013 probation hearing, at all, ever,  this also a violation[5].

## B. Plaintiff's Sixth Amendment/Six Amendment Retaliation Goes Forward

---

[5]    Although revocation of probation is not part of the criminal prosecution, it entails the loss of liberty, revocation of probation is a serious deprivation,  and due process must therefore be accorded. Commonwealth v. Davis, 336 A.2d 616 (Pa. Super 1975). Commonwealth. v. Ferguson, 761 A. 2d 613, 617 (Pa. Super. 2000); Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973); Morrissey v. Brewer, 408 U.S. 471, 481-82 (1972).

Due process safeguards means at minimum:
(1) written notice of the claimed violations of probation or parole; (2) disclosure to the probationer or parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

Commonwealth v. Allshouse, 969 A.2d 1236, 1240 (Pa. Super. 2009);  (citing Gagnon v. Scarpelli, 411 U.S. at 786.

Here it was mandatory since five decades ago that written notice of each alleged violation and an adequate opportunity to prepare is required prior to hearing. Champion v. Com. Board Probation and Parole, 399 A.2d 447 (Pa. Cmwlth. 1979). Probation/parole officer must strictly comply with requirement that notice of alleged violations must be writing. Commonwealth v. Davis, 418 A.2d 669 (Pa. Super 1980). Requirement of written notice is a simple and straight forward requirement that the probation officer  must comply. Commonwealth v. Harris, 380 A.2d 471 (Pa. Super. 1977). With respect to right to receive written notice of alleged probation violation, actual notice by the way of oral advice or existence of a prior revocation proceeding was irrelevant. Commonwealth v. Parker, 378 A.2d 970 (Pa. Super 1977). Again, fundamental fairness is a key issue in a violation hearing. United States v. Hamilton, 708 F.2d 1412, 1414 (9th Cir.1983).

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Roe v. Flores–Ortega, 528 U.S. 470 (2000). This right plays "a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the `ample opportunity to meet the case of the prosecution' to which they are entitled." Strickland v. Washington, 466 U.S. 668, 685 (1984). It is also well settled a criminal defendant has a constitutional right to consult with counsel prior to and during trial. See, e.g., Perry v. Leeke, 488 U.S. 272 (1989) "The right to a private interview by a person accused of crime with his lawyer prior to trial is a valuable right, and it is the duty of the court to jealously guard the accused from deprivation thereof." Coplon v. United States, 191 F.2d 749, 758 (D.C.Cir. 1951) (quoting Hughes v. Cashin, 184 Misc. 757, 54 N.Y.S.2d 437, 441 (N.Y.Sup. Ct.1945)). Obviously, failure of counsel would constitute ineffective assistance of counsel.

This right to have counsel present at criminal proceedings applies to probation/parole. Commonwealth v. Cappello, 823 A.2d 936 (Pa. Super. 2003) ("It is axiomatic that Appellant had a constitutional right to effective representation during that hearing"); Pa.R.Crim.P. 708(B) (right to counsel is among array of rights available to defendant at parole hearing); Commonwealth v. Vasquez, 255 Pa.Super. 545, 389 A.2d 111 (1978) (constitutional right to effective counsel during parole hearing); Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549 (1969).

Plaintiff had a constitutional right to have counsel, offender Harrison retaliated and punished Plaintiff for exercising that right, plain and simple. Not only did he violate the sixth, it also falls under the first as well,

15

## C. Plaintiff's Article I Section 8 Claims Go Forward

They have not listed any cases with conclusive effect to support their position.

Although the Pennsylvania Supreme Court has not yet expressly recognized a right to

recover damages for their Constitution, it has not expressly rejected such a claim either.

When deciding an issue of state law that has not been addressed by the Penn Supreme

Court, a federal court must 'forecast the position of the supreme court of the forum would

take on the issue." JewelCor Inc. v. Karfunkel, 515 F.3d 203, 206 n.4 (3d Cir. 2008).

Persuasive data would show they would decide that in fact there is a right to

damages. For starters, Jones v. City of Philadelphia, 68 Pa. D. & C. 4th 47 (C.P. Phila.

County 2004), provides the best insight into the probable resolution of this issue by a

Pennsylvania court. There a court thoroughly analyzed the history of the issue and

properly found there was such a right. Local federal cases, the same. See Christie v.

Borough of Folcroft, 2005 WL 2396792, at *12-13 (E.D.Pa. 2005) (finding damages

were available under of the PA Constitution.) Moreover, Pennsylvania was formed for

the common good, common consent of the people, and being able to obtain money for

basic human rights violations was what the founding fathers have expressed. It is too

early at this stage to dismiss this claim for damages.

Also of course they have no immunity for prospective relief on the state claims[6].

---

[6] Greco v. Hazleton City Authority, 721 A.2d 399, 402 (Pa. Cmwlth. 1998); Phila Life Insurance Company
v. Commonwealth, 190 A.2d 111, 114 (1963); Rawlings v. Bucks Cty. Water & Sewer Auth., 702 A.2d
583, 587 (Pa. Cmwlth. 1997) (Ez Parks, Inc. v. Larson, 498 A.2d 1364, 69-70 (Pa. Cmwlth.1985), aff'd 503
A.2d 931 (Pa. 1986) (injunctive relief); Legal Capitol, LLC v. Cat Fund, 750 A.2d 299, 302 (Pa. 2000)
(declaratory judgments); Centennial School Dist., v. Independence Blue Cross, 885 F.Supp 683, 689
(E.D.Pa.1994); O'Hara v. Hanley, No. 08-1393 (W.D.Pa. 2008); Alegerio v. County of Pike, No. 10-0111
(M.D.Pa. 2010).

**D. Plaintiff's Claim Of  42 Pa.C.S. § 5929 PA Breach Of Physician-Patient Confidentiality and Federal Equivalents Go Forward**

Like everything else, these illegal acts also fall under First Amendment retaliation, because it was let me get him, let me be malicious and violate his federal and state medical information rights, oh you want to sue, let me do it again, anybody want the records, here you go, multiple copies disseminated everywhere. They also fall under 42 Pa.C.S. § 5929 PA Breach Of Physician-Patient Confidentiality.  Under prevailing Pennsylvania law, a breach of physician-patient confidentiality gives rise to a distinct cause of action" Burger v. Blair Medical Associates, Inc., 964 A.2d 374, 378 (Pa. 2009). The harm arising from a breach entails not only the mental suffering due to exposure of private information, but also subsumes an erosion of an essential, confidential relationship. Burger at 380. Like everything else, Victim has suffered tremendously as a result of this, and continues to suffer to this day.

In addition to F.A. under 1983, PA § 5929, the complaint and its facts also establishes Fourteenth Amendment violations of his substantive due process rights as well as general 1983. The Fourteenth Amendment's concept of personal liberty includes protection of limited zones of privacy. See Whalen v. Roe, 429 U.S. 589, 598-99 n.23 (1977); Roe v. Wade, 410 U.S. 113, 153 (1973). The protection of privacy extends to two types of interests: "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." Whalen, 429 U.S. at 599-600. See also Doe v. Delie, 257 F. 3d 309, 315 (3d 2001) ("An individual has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters.")

17

The Third Circuit has long held that medical records are protected from disclosure by the first of these interests, the confidentiality branch of the right to privacy. "We have long recognized the right to privacy in one's medical information: "There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." Doe, at 315; Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3d Cir.1991); United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577-78 (3d Cir. 1980); cf. Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 112-13 (3d Cir. 1987) (police application seeking medical information implicates right to privacy). Plaintiff's constitutional rights were again trampled on via the Fourteenth Amendment and general 1983 with the offenders illegal acts.

**E. First Amendment**

There are numerous federal and state claims in this lawsuit, the following is the applicable standard and law on one, First Amendment retaliation. "Retaliation is always reprehensible, and, regardless of whether the underlying activity is constitutionally protected it is obviously improper for officers to invoke criminal laws for retaliatory purposes." Gericke v. Begin, 753 F. 3d 1, 6 (1st Cir. 2014). They have an unreachable burden is this case (both in fact and law). "Speech involving government impropriety occupies the highest rung of First Amendment protection. Therefore, the defendants in the present case bear a truly heavy burden." McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005)[7]. To state a First Amendment Retaliation claim, a plaintiff need only show

---

[7] See also Connick v. Myers, 461 U.S. 138, 145 (1983) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government"). Davis v. Ector County, 40 F.3d 777, 782 (5th Cir.1994) ("There is perhaps no subset of `matters of public concern' more important than bringing official misconduct to light."). Baldassare v. New Jersey, 250 F.3d 188, 195-96 (3d Cir.2001) (matters of public

18

that the action was taken "at least in part because of the exercise of the protected conduct." Hill v. Lappin, 630 F. 3d 468, 472 (6th Cir. 2010); Siggers-El v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005); Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir.1999) (en banc).

It has long been established "that official retaliation for the exercise of any constitutional right creates an actionable claim under Section 1983." Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997). With First Amendment retaliation, "the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual." Anderson, at 161. "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See also Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)  (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated). It's long been clear that an actionable claim for retaliation "is not based on harshness of sanctions but the imposition of any adverse action for the exercise of free speech". Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987).

The "'deterrence threshold,' . . . is very low"… "even 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable . . . ." O'Connor v. City of Newark,

---

concern include exposure of corrupt practices by government officials).. Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir.2001) (exposure of official misconduct is of great consequence to the public)

19

440 F.3d 125, 128 (3d Cir. 2006)[8]. We also know "any form of official retaliation for

exercising one's freedom of speech, including prosecution, threatened prosecution, bad

faith investigation, and legal harassment, constitutes an infringement of that freedom"

Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir.2001).  Even a "`the threat of invoking

legal sanctions and other means of coercion, persuasion, and intimidation,'" can show

constitutional violation. White v. Lee, 227 F.3d 1214, 1228  (9th Cir. 2000).  Fear of

retaliation may chill an individual's speech, and, therefore, permit the government to

"`produce a result which [it] could not command directly.'" Perry v. Sindermann, 408

U.S. 593, 597 (1972).

     Temporal proximity alone, like what Plaintiff has proven here, supports an claim of

retaliation. Gonzalez-Droz v. Gonalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011); LeBoon v.

Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007) ("Where the

temporal proximity between the protected activity and the adverse action is unusually

suggestive, it is sufficient standing alone to create an inference of causality). See also

Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) ("the timing of the search raises an

inference of retaliatory motive"); Stever v. Independent School District No. 625, 943

F.2d 845, 852 (8th Cir.1991) (same). Again, we know Plaintiff's protected activities

including the lawsuit and subsequent continued refusal to drop it occurred sufficiently

close in time to the adverse actions to establish retaliation

---

[8] The circuits are clear there is no place for retaliatory harassment and it is actionable.
"[S]ince there is no justification for harassing people for exercising their constitutional rights, [the
deterrent effect] need not be great in order to be actionable." Siggers-El v. Barlow, 412 F.3d 693, 701 (6th
Cir. 2005); Suppan v.Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). "The effect on freedom of speech may be
small, but since there is no justification for harassing people for exercising their constitutional rights it need
not be great in order to be actionable." Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). The injury
asserted is the retaliatory accusation's chilling effect on Hines... First Amendment rights... We hold that
Hines failure does not demonstrate a more substantial injury does not nullify his retaliation claim." Hines v.
Gomez, 108 F.3d 265, 269 (9th Cir. 1997), cert denied, 118 S.Ct. 2339 (1998).

Moreover, actions that are otherwise proper and lawful may nevertheless be actionable if they are taken in retaliation against a person for exercising his or her constitutional rights. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977); Bloch v. Ribar, 156 F.3d 673, 681-82 (6th Cir.1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper"); Peterson v. Shanks, 149 F. 3d 1140, 1144 (10th Cir 1998) ("Officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. "This principle applies even where the action taken in retaliation would be otherwise permissible."); Brown v. Crowley, 312 F.3d 782, 791 (6th Cir.2002) ("prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s]"); Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001), Wornell v. Henry, 219 F.3d 1197, 1215 (10th. Cir. 2000); DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990); Matzker v. Herr,  748 F.2d 1142, 1150 (7th Cir. 1984).

Again, Plaintiff need only show that the action was taken "at least in part because of the exercise of the protected conduct."  Hill, at 472, Siggers, at 699. Without question, Plaintiff has already proven at this point that the offenders' actions constituted retaliation, that the lawsuit and the denial to end it was the motivating factor. Also at this stage Plaintiff points out that the burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." Mickey v. Zeidler Tool and Die Co., 516 F. 3d 516, 523 (6th Cir. 2008).

In regards August 22nd, 2013 office visit, Ford punished Plaintiff by threatening to tell the judge, obviously to sanction him, about the suit if Plaintiff did not drop it. We

21

know he later on made good on that threat and it became attempted prosecution. But this

threat alone was enough to suffice to make out a claim, he will cite the law in a second.

In regards to the September 19th, 2013 office visit Ford again demanded drop the suit,

Ford or else he was calling the d.a. to get him punished and sanctioned against Plaintiff if

he did not drop the suit. This threat by itself just like the prior one is enough to make out

a claim. It is well-established threats of punishment, sanctions including prosecution for

protected activity are sufficient to make a claim. The First Amendment forbids

government agents to attempt to suppress the protected speech of persons by threatening

that legal sanctions will at his urging be imposed unless there is compliance with his

demands. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 64-72 (1963);  Okwedy v.

Molinari, 333 F.3d 339, 344 (2d Cir. 2003); American Family Association, Inc. v. City &

County of San Francisco, 277 F.3d 1114, 1125 (9th Cir. 2002); Backpage.com, LLC v.

Dart, 807 F. 3d 229, 231  (7th Cir. 2015).

Informal measures, such as "the threat of invoking legal sanctions and other means of

coercion, persuasion, and intimidation," can violate the First Amendment also. Bantam

Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963) (officials injured the plaintiffs simply by

sending them an official letter suggesting that some of their publications were

"completely objectionable for sale . . . for youths," even though no penalties attached to

such a letter). A government agent  "who tries to shut down an avenue of expression of

ideas and opinions through "actual or threatened imposition of government power or

sanction" is violating the First Amendment. American Family Association, Inc. v. City &

County of San Francisco, 277 F.3d 1114, 1125 (9th Cir. 2002). "A public-official

defendant who threatens to employ coercive state power to stifle protected speech

22

violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form". <u>Okwedy v. Molinari</u>, 333 F.3d 339, 344 (2d Cir. 2003).

Oral or written statements or threats made by public officials can give rise to a valid First Amendment claim, these comments of a government official can reasonably be interpreted as "intimating that some form of punishment or adverse action will follow the failure to accede to the official's request." <u>Hammerhead Enters., Inc. v. Brezenoff</u>, 707 F.2d 33, 39 (2d Cir.1983). See <u>White v. Lee</u>, 227 F.3d 1214, 1228 (9th Cir. 2000) ("threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,'" sufficient); <u>McCormick v. City of Lawrence</u>, 253 F.Supp. 2d 1172, 1196 ("the threat of arrest by a officer is exactly the sort of act that would deter a person of ordinary firmness from exercising his constitutional rights"); <u>Hill v. Lappin</u>, 630 F. 3d 468, 472 (6th Cir. 2010) ("Even the threat of an adverse action can satisfy this element"); Siggers-El v. Barlow, 412 F.3d 693, 701-02 (6th Cir.2005) (the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner) and many others.

"Such a threat is actionable and thus can be enjoined even if it turns out to be empty—the victim ignores it, and the threatener folds his tent". <u>Backpage.com, LLC v. Dart</u>, 807 F. 3d 229, 231 (7th Cir. 2015).

Again we know just one of these two threats is sufficient to make out a claim, let alone both. Both it goes past mere threats that as we have two *attempted* prosecutions. In the prior scenario, Ford through Harrison in a live probation hearing told the judge

23

overseeing the probation that Plaintiff sued Ford and the supervisors trying to get him punished, sanctioned. In the next one Ford picked up the phone and dialed the d.a right after the threat, screamed at Plaintiff to get out, and subsequently spoke to a d.a. and told him to file charges against Plaintiff in the form of probation violations, punishing him, sanctioning him.

## F. Ordinary Firmness/ Adverse Action

First off, the question is for the jury to determine and cannot be raised before then. Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000); Zamboni v. Stamler, 847 F.2d 73, 79 n.6, 80 (3d Cir.) cert. denied, 488 U.S. 899 (1988); Bell, 308 F.3d at 603.

The jury will have no problem at all in this case. This is far, far, from a prison context but he uses inmate law as an example, it even would satisfy that context. It has been long established cases long establish that inmates who complain/file a grievance cannot be retaliated against in any way including being charged with misconduct. Bistrian v. Levi, 696 F. 3d 352, 376 (3d Cir. 2012); Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001 Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir.2000); Johnson v. Avery, 393 U.S. 483 (1969); Brown v. Crowley, 312 F.3d 782, 791 (6th Cir.2002) ("prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s].") Babcock v. White, 102 F.3d 267, 275-76 (7th Cir.1996); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997). Plaintiff must only have suffered some 'adverse action' at the hands of the prison officials". Bistrian v. Levi, 696 F. 3d 352, 376 (3d Cir. 2012).

24

Here we have countless violations. Three separate illegal searches and seizures, also the robbing of due process with the "summary sheet." Sixth Amendment violation. Numerous violations of the confidential protected information. Even capping the latter at five that is 10 violations right there. All of the above also count as f.a. violations as well so we are at 20.  Two threatened prosecutions/punishments and two attempted prosecutions. 24 separate violations not even including PA Article I Section 8. Also not even including the supervisor violations. The searches alone are enough to establish it for a jury. Scher v. Engelke, 943 F.2d 921, 925 (8th Cir. 1991) ("This is a clear case of a prisoner who was subjected to retaliatory cell searches and conduct violations for bringing the illicit conduct of a prison guard to the attention of prison officials. cert. denied, 503 U.S. 952, (1992); Walker v. Bain, 257 F.3d 660, 664 (6th Cir.2001), (one single retaliatory cell after inmate complained and demanded a grievance form satisfies the adverse action prong), cert. denied, 122 S.Ct. 2291, (2002).

The threats alone are also enough. As the Supreme Court noted in Bantam Books, "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around...." 372 U.S. at 68.  Human experience demonstrates that the mere threat of government criminal action will in most cases result in the threatened person desisting from the protected activity contemplated action. Amer. Civ. Liberties U.  v. City of Pittsburgh, 586 F. Supp. 417, 422  (W.D.Pa. 1984).  "Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." Virginia v. Hicks, 539 U.S.

113, 119, (2003). Consequently, "the censor's determination may in practice be final." Freedman v. Maryland, 380 US 51, 65 380 U.S 51, 58 (1965). See also the previously cited cases plus dozens not.

Plaintiff notes "the issue is whether a person of ordinary firmness would be deterred, not whether the plaintiff himself actually was deterred." Harris v. Bornhorst, 513 F.3d 503, 519 (6th Cir. 2008)[9] . "Actual deterrence need not be shown." Harbin-Bey v. Rutter, 420 F.3d 571, 579 (6th Cir.2005). Indeed Victim was deterred even though this one did not need to be. Fear of retaliation may chill an individual's speech, and, therefore, permit the government to "`produce a result which [it] could not command directly.'" Perry v. Sindermann, 408 U.S. 593, 597 (1972).

Plaintiff points out criminals like Ford and others there have people on strings, playing with their lives like puppet masters, like it is a game. Victims in that building and elsewhere in the state going to succumb to searches, threats, prosecutions, everything in here, one instance of anything is enough and also almost nobody that did not be dettered, succumb, actually has the skill, time, and finance to put together a lawsuit. In jail people sit around, they  have forms there, other scan advise, here none of that is present, making it even more of a  guarantee of deterrence.

"Since this is a § 1983 action, the plaintiff is entitled to relief if his complaint sufficiently alleges deprivation of any right secured by the Constitution". Higgins v.

_____

[9] "Defendants further argue that Bell cannot prove that their actions were sufficient to deter protected conduct, given that Bell himself was not deterred from persisting in this lawsuit. Thaddeus-X makes clear, however, that the adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted" .Bell at 606. See also Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir.1983) ("It is not necessary that the inmate succumb entirely or even partially to the threat so long as the ... retaliatory act was intended to limit the inmate's rights").

Beyer, 293 F.3d 683, 688 (3d Cir. 2002). Here we have countless including a illegal

search and seizure that Plaintiff is entitled to judgement of law for right now.

### G. They Cannot Raise Qualified Imunnity Issues At This Stage

Plaintiff does not know if they did because he is dealing with a biased dope, in case

they raised it they cannot do so in a motion to dismiss let alone at this bogus stage.

Qualified immunity is an affirmative defense. A "complaint states a claim on which relief

may be granted whether or not some defense is potentially available... Resolving defenses

comes after the complaint stage." U.S. v. Northern Trust Company, 372 F.3d 886, 888

(7th Cir. 2004). Rule 12b is clear it must be raised first on a pleading like an answer not

on a non-pleading.

How to Present Defenses. Every defense to a claim for relief in any pleading must be
asserted in the responsive pleading if one is required. But a party may assert the
following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

See also Ahmad v. Furlong, 435 F. 3d 1196, 1202  (10th Cir. 2006)  (must be in an

answer or amended answer); Harris v. Secretary, U.S. Dep't of Veterans Affairs, 126 F.3d

339, 344-45 (D.C.Cir.1997).

### H. They Would Never Have Qualified Immunity

27

They never will possess it, Plaintiff has already clearly demonstrated the inapplicability of the defense. Any reasonable person would or should know, and the offenders did know, that the unlawfulness could not be more apparent.

The burden is on an offender to establish that they are entitled to qualified immunity. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014); Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir.2010)[10]. They most certainly have not done so, nor could they ever. An agent is considered to have constructive knowledge of established law. Harlow, 457 U.S. at 818-19, Cannon v. City of Denver, 998 F.2d 867, 874 n.6 (10th Cir. 1993); McBride v. Village Of Michiana, 100 F.3d 457, 460 (6th Cir. 1996) ("A reasonably competent public official should know the law governing his conduct.'") (citing Harlow, at 818-19). Following the Supreme Court's lead, the Third Circuit (and every other one) "has adopted a broad view of what constitutes an established right of which a reasonable person would or should have known." Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004).

Federal courts must apply all relevant cases within their knowledge in deciding an issue of qualified immunity. Elder v. Halloway, 510 U.S. 510, 516 (1994). This includes law from other federal circuits. Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 160 (3d Cir. 2001); Clark v. Wilson, 625 F.3d 686, 690 (10th Cir. 2010); Bell v. Johnson, 308 F. 3d 594, 602  (6th Cir 2002), as well as district courts, Osolinksi v. Kane, 92 F.3d 934, 936 (9th Cir. 1996); this includes unpublished decisions of district courts; Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir.2002); state courts clearly establish a right Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir.2003); dicta does as well. Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir. 2009).

---

[10] See also Gomez v. Toledo, 446 U.S. 635, 640 (1980); Bailey v. Pataki, 708 F.3d 391, 404 (2d Cir.2013)

The very action in question does not have to "previously been held unlawful in order to deny qualified immunity." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances". Hope v. Pelzer, 536 U.S 730, 741 (2002). Law can be clearly established even in the absence of controlling precedent. Type of conduct engaged by the defendant may be so unconstitutional that there was no need to litigate the issue previously. Wilson v. Layne, 526 U.S. 603, 620 (1999). "Some constitutional violations are self-evident' and do not require particularized case law to substantiate them." Glik v. Cunniffe, 655 F. 3d 78, 85 (1st Cir. 2011); Lee v. Gregory, 363 F.3d 931, 936 (9th Cir. 2004).

This principle applies with full force retaliation cases like this one. See Fraternal Order of Police Lodge No. 121, Inc. v. City of Hobart, 864 F.2d 551, 553 (7th Cir.1988):

Simply because no government official has heretofore deemed it acceptable to retaliate against and threaten a reporter for relating the activities of a local governmental body does not mean that the right of a member of the press to be free from such retaliation has not been "clearly established." Both the Supreme Court and this court have, in fact, consistently recognized "that retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment[11]."

This is why it is clear officers are not entitled to "one free violation" of constitutional rights every time they are asked to apply a well-established principle to a new set of facts. Wilson, 526 U.S. at 625. Here they are not entitled to twenty four free violations, and there are no new set of facts either to that extent. As was long said, "Requiring officials to consider the legal implications of their actions should have a

---

[11] See also K.H. Through Murphy v. Morgan, 914 F.2d 846, 851 (7th Cir.1990) (There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances.);

salutary effect". People of Three Mile Island v. Nuclear Regulatory

Comm'rs, 747 F.2d 139, 145 (3d Cir.1984).

We know all of the above is useless because they did know exactly what they were

doing, was one constitutional violation after another, the unlawfulness was apparent. The

right to be free from First Amendment retaliation was clearly established. Hartman v.

Moore 547 U.S. 250, 256 ("the law is well settled that as a general matter the First

Amendment prohibits government officials from subjecting an individual to retaliatory

actions" ). "It has long been established that the First Amendment freedoms are protected

by the Fourteenth Amendment from invasion by the States." Edwards v. South Carolina,

372 U.S. 229  235 (1963). "[R]etaliation by public officials against the exercise of First

Amendment rights is itself a violation of the First Amendment." Zilich v. Longo, 34 F.3d

359, 364[12].

It has been clear for at least 50 years with inmates let alone people walking around

in society. Johnson v. Avery,393 U.S. 483, (1969) (recognizing that prison officials may

not retaliate against prisoner for grievances and lawsuits).  It was even clear for 50 years

in an employment context. Connick v. Myers, 461 U.S. 138, 142 (1983) ("For at least 15

years, it has been settled that a state cannot condition public employment on a basis that

infringes the employee's constitutionally protected interest in freedom of expression.").

The right to be free from unreasonable searches was clearly established. See U.S.

CONST, amend. IV (unreasonable search); Payton v. New York, 445 U.S. 573,

(1980) (unreasonable search), twenty million other cases. The right to be free from

unreasonable searches Article I Section 8 was also just as clearly established. Again the

---

[12]See also Perry v.Sindermann, 408 U. S. 593, 597 (1972) (noting that the government may not punish a
person or deprive him of a benefit on the basis of his "constitutionally protected speech"

exact violations have been clear here for at least 30 years. United States v. Hill, 967 F.2d 902, 907-11 (3d Cir. 1992) and a million PA cases already listed numerous times. At no point ever was there any PA case and subsequent Third Circuit that authorized random searches for probationers or parolees.

The right to be free from illegal detainment, imprisonment, seizure has been clear for decades. Plaintiff's due process rights in regards to probation hearings were also were clearly established for decades. See Morrissey and Gagnon. The right to have counsel in criminal proceedings including probation was clearly established for decades. See above case law. The claims involving private confidential medical records was long established in PA by actual statute and case law and also federal. Sterling v. Borough of Minersville, 232 F.3d 190, 198 (3d Cir. 2000) ("Because the confidential and private nature of the information was obvious, and because the right to privacy is well-settled, the concomitant constitutional violation was apparent).

The excuses of supervisors were also long put on notice. See Stidham v. Peace Officers Stanards & Training, 265 F.3d 1144, 1156-57 (10th Cir. 2001) (agent is not entitled to qualified immunity when an affirmative link has been shown connecting him or her to a clearly established violation of constitutional law); Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir.1999) (qualified immunity is not available for defendants that acted with deliberate indifference to constitutional rights)[13]. Reasonable

---

[13] See also Gutierrez Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989) (Police supervisors were liable for deliberately indifferent in carrying out their disciplinary obligations. The police disciplinary system went through the procedural motions without any real objective of finding the truth, (mirrors the instance case), substantial punitive damages awarded); Fundiller v. City of Cooper City,777 F.2d 1436, 1443 (11th Cir.1985) (police supervisor held liable for subordinate rights violation of civilian because of practice allowing violation to occur); Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997) (denying qualified immunity, that "a reasonable police supervisor, charged with the duties that Vazquez bore, would have understood that he could be held constitutionally liable for failing to identify and take remedial action concerning an

31

probation supervisors, chiefs, policymakers would have understood that they could be held constitutionally liable for their unlawful actions. Their unlawfulness was apparent.

**V. Let's Finally Help Sickolas Ford Right Now**

Finally, Plaintiff wanted to address the utmost important subject, let's finally give Nicky Da Sicky the help he so desperately needs. He will say again this does not have to be adversarial he is willing to work with everybody on this. If we have to get an ambulance or police van to go down and drag Ford out of his residence and commit him then that's what we have to do.

Plaintiff out of good faith is offering them a plea bargain, for Ford to plead guilty to five counts of section 1983 in exchange for a sentence of 3 years of commitment in a maximum security psychiatric hospital, alone away from the other sickos following Dr. J.C's recommandations, followed by 2-4 years imprisonment, tailed by 20 years of intensive probation with Plaintiff overseeing it, plus a special 75,000 assessment paid to Plaintiff. This is more than a fair offer given the circumstance.

Plaintiff has also recently spoken to Dr. J.C., who expressed deep concern that Nick The Sicko has not been treated yet, said has to be a lot worse than he was since his last examination which way a year and a half ago. See attached exhibit.

**CONCLUSION**

The complaint and all claims have to go forward against all of the offenders. Plaintiff is entitled to judgment as a matter of law for the illegal August 22nd 2013, search and seizure.

---

officer"); <u>Sockwell v. Phelps</u>, 20 F.3d 187 (5th Cir. 1994) (punitive damages against prison supervisors for by knowingly permitting equal protection violations of prisoners).

Dated February 1st,  2017

**J.C. Plaintiff**
Box 934
Philadelphia, PA 19105



January 27th, 2017


Medical Office of Dr. JC and Associates
Philadelphia, PA


To Who It May It Concern In The Eastern District


As you are aware it has been a full year and half since I examined Nick. At that time he was out of control, at an extreme level of danger to himself and others and had been so for a long time. I can only imagine what he is now all this time later, still untreated. It is paramount he be committed right now. I have reviewed the plea bargain offered by Plaintiff, it is more than fair. Based on my medical findings and examinations of Nick, he is only to be placed in a maximum security psychiatric hospital for at least 3 years, must be alone in a rubber room where he cannot gnaw his way out. Because he is a walking danger, he is to be put in straight jacket and tripled cuffed and shacked where escorted anywhere. I will evaluate his progress in treatment periodically. Please note I am available for any depostions in this case as well as any more evaluations of Nick. If you have any questions contact me through Plaintiff.


Sincerely,

Dr. J.C.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| J.C. | : | |
| Plaintiff | : | Civil Action |
| v. | | No. 15-4745 |
| Ford, Et, al | : | |
| Defendant | | |

**FILED**

FEB 1 0 2017

KATE BARKMAN, Clerk
By_____Dep. Clerk

## CERTIFICATE OF SERVICE

I do hereby certify that service of a true and correct copy of Brief In Opposition Of Sua

Sponte Dismissal has been made available by CM/ECF

Criminal Boyle
620 Freedom Business Center, Suite 300
King Of Prussia, PA 19406

J.C.
Box 934
Philadelphia, PA 19105

Dated: February 2nd,, 2017